## Ex Parte George C. Wilson.

### No. 1484. Decided October 11, 1911.

**Habeas Corpus—Extradition—Fugitive from Justice.**

Where it appeared from the evidence that relator was brought from Mexico to the United States, and was there arrested by Texas officers on an extradition warrant based upon an indictment pending in the State of Nevada, but it further appeared that the Texas officers had no connection in forcing the relator upon Texas soil, the fact that citizens of Mexico had brought relator across the boundary line by force was no ground for his release under habeas corpus proceeding in the District Court of El Paso, Texas. Following Brookin v. State, 26 Texas Crim. App., 121, and other cases.

Appeal from the District Court of El Paso. Tried below before the Hon. James R. Harper.

Appeal from a habeas corpus proceeding denying release of relator under writ of extradition.

The opinion states the case.

*Ralf Border,* for relator.—Upon question of the right of extradition: In re Kopel, 148 Federal Rep., 505; Ex Parte Brown, 28 Federal Rep., 653; Hadden v. People, 25 N. Y., 373.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Relator is under arrest at El Paso. It is alleged that he has been indicted in the State of Nevada, and is a fugitive from justice.

Upon his arrest, he sued out a writ of habeas corpus before Hon. James R. Harper, judge of the District Court. Upon a hearing he was remanded and placed in the custody of the sheriff of El Paso County, pending this appeal.

Relator contends that he was residing in Juarez, Mexico, and that three men came to his place of abode and arrested him without warrant or other process. That he was placed in jail, and subsequently in the night-time, he was placed in a carriage, driven to a point on

the bridge over the Rio Grande river, where he was delivered to officers of the City of El Paso, who placed him in jail in El Paso, and who swore out a complaint against him charging him with being a fugitive from justice, upon which complaint a warrant was issued, and he was held by virtue of that process. Relator testifies that he resisted all these steps, and that in thus kidnapping him, according to his version, the officers committed a criminal offense and he should be released and permitted to return to Mexico. The evidence offered by the relator tends strongly to support his contention that he was kidnapped and brought into Texas; that he had not taken refuge in Texas and was not in this State voluntarily, but forcibly brought here for the purpose of effecting his arrest and holding him for the Nevada authorities. The officer in Texas effecting his arrest states that relator was in Texas at the time he arrested him, and he had no knowledge of how he came into the State; that if there was a conspiracy to bring relator out of Mexico and into Texas for the purpose stated he was unaware of it. He states that at this time, he and other officials guarded the bridge to prevent undesirable subjects from entering the United States, and to arrest any who might come across who were wanted in this country. During the revolution in Mexico and the occupancy of Juarez by troops, this was the custom of the officers, and on the night in question, he was at his post when he was called by relator who was then on Texas soil. Knowing that he was wanted in Nevada, he arrested him and placed him in jail.

While the circumstances accompanying the arrest would create a suspicion that the American officers were aware of the actions of the Mexican officers, and were there to receive relator, yet, there is no evidence of this fact, and they positively deny any knowledge of it, or that they were in any way party to the arrest of relator in Mexico, or his deportation across the boundary line. They are equally positive that he was in Texas when the arrest was consummated. We are inclined to think that the evidence sustains the officers' contention that relator was across the boundary when he was arrested, even though he may have been brought there by force as he contends, and there being no evidence that Texas officers were in any way connected with the citizens of Mexico, whom relator charges with wrongdoing, we can not impute such wrongdoing to them. Suspicious circumstances can not outweigh the positive evidence of officers Stansel and Smith. From the evidence it is clear that relator was brought to the United States by force, but officers of this State or country are shown to have had no connection with such conduct. Would the fact that citizens of a foreign country had brought relator across the boundary line and when he had thus been brought, our officers having their attention called to the fact that he was in this country, be grounds for his release under habeas corpus? If it had been shown that the officers of this country were parties to the illegal conduct of the citizens of Mexico, a different question might be presented.

It appears from the papers on file in this cause, that since the·arrest, the governor of Nevada has requested the governor of Texas to honor his requisition for relator, and the governor of this State has done so, and relator is now held by virtue of process issued by the governor, who has directed that he be delivered to the agent of the State of Nevada.

Relator in his application does not raise any ground as to the sufficiency of the papers in this case, and does not question that he is the person against whom an indictment is pending in the State of Nevada. He simply asks his release because he did not come voluntarily into Texas, but was illegally arrested in Mexico and wrongfully brought to Texas. Under the facts of this case and decisions of this court we do not think him entitled to the relief prayed for. Brookin v. State, 26 Texas Crim. App., 121; Ex parte Davis, 51 Texas Crim. Rep., 609; Ex parte Brown, 28 Fed. Rep., 653; Ker v. Illinois, 119 U. S., 436; In re Johnson, 167 U. S., 120; Kingen v. Kelly, 28 Pac. Rep., 36.

Judgment affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.