## Ex Parte Chas. Ponzi.

### No. 10567.   Delivered October 27, 1926.

### Rehearing denied January 26, 1927.

#### 1.—Habeas Corpus—Extradition—Executive Warrant.

Where the governor of this state has issued an executive warrant upon the requisition of the governor of the state of Massachusetts, and the warrant issued is formal in every particular, the presumption obtains that it was issued upon the proper authority and the burden is on the fugitive to rebut this presumption. See Ex Parte Haynes, 98 Tex. Crim. Rep. 609, and other cases cited.

#### 2.—Same—Continued.

The law does not require that the governor file with the secretary of state all papers upon which the requisition is granted, nor is the presumption indulged that there was not filed with her by the demanding governor, other papers which induced her action. See Ex Parte Carroll, 86 Tex. Crim. Rep. 301, and other cases cited.

#### 3.—Same—Validity of Indictment—Rule Stated.

The general rule precludes an inquiry into the validity of an indictment, the basis for an extradition warrant, on account of the verbiage in which it attempts to charge the offense, nor can a collateral attack by way of habeas corpus prevail against an indictment, which purports to charge an offense, coming within the purview of the statute upon the subject of extradition. Exceptions to this rule prevail, only where treaty relations are involved. See Ex Parte Royall, 117 U. S. 241, and other cases cited.

#### 4.—Same—Status of Relator.

The relator was induced by an officer of a foreign vessel, to leave same, and come ashore at New Orleans, where he was seized and forcibly transported to Houston, Texas, by a purported deputy sheriff. He was not seized by the government, nor by any authorized agent of the government. The fact that one was kidnapped in another state, by an individual not acting under the governmental authority, is not regarded in this state as a reason for releasing a fugitive from justice on a habeas corpus proceeding. See Brookin v. State, 26 Tex. Crim. App. 121, and numerous other cases cited in this opinion.

#### 5.—Same—Continued.

A fugitive from justice has no right of asylum. The fact that he comes into custody by the trespass of an individual, affords him no immunity

from prosecution, nor would the fact that he was not amenable to prosecution in the state of Texas, warrant the governor of Texas in refusing the requisition of the state of Massachusetts, where ·he was amenable to prosecution. See Ker v. Illinois, 119 U. S. 436; Rose's notes on U. S. Rep. Revised Ed., Vol. 13, p. 699.

ON REHEARING.

#### 6.—Same—Evidence—Statutes of Foreign State—Properly Admitted.

Where on a habeas corpus hearing of an extradition proceeding the state was permitted to introduce the statutes of the demanding state, no error is shown. It is the universal holding of this court that in habeas corpus matters we are not governed by ordinary rules or forms of trial. The matters involved are before the court, and we conceive it proper for the court to obtain and have before him all the light possible before he rules on the question involved in the application for habeas corpus.

#### 7.—Same—Sufficiency of Indictment.

· The copy of the indictment against relator in the state of Massachusetts which was presented ·to the governor of Texas, was a good and valid indictment under the laws of Massachusetts, charging ·theft of money, and was a sufficient basis for the issuance of the executive warrant by the governor of the state of Texas. See Chap. 277, General Laws of Massachusetts, 1921, Comm. v. Quinn, 222 Mass. 504.

Appeal from the Criminal District Court of Harris County. Tried below before the Hon. Chas. E. Ashe, Judge.

Appeal from an order remanding relator to the custody of officers of the State of Massachusetts, for extradition to that state.

The opinion states the case.

*Heidingsfelder, Kahn & Branch* of Houston, for appellant.

*Alfred R. Shrigley,* Assistant Attorney General of Massachusetts; *O'Brien Stevens,* Assistant District Attorney of Harris County; *Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State. ·

On surrender of fugitive from justice to demanding state, respondent, the State of Texas, cites: Clarks case, 9 Wind. 212-219; State v. Schlem, 4 Harrington, 579; Romain's case, 23 Cala. 585; Kingsbury's case, 106 Mass. 223-225; Ex Parte Pearce, 32 Tex. Crim. Rep. 301; People v. Donohue, 84 N. Y. 438.

MORROW, PRESIDING JUDGE.—The appeal is from an order refusing to discharge the relator upon a writ of habeas corpus.

The writ was issued by a District Judge. In the return of the sheriff, it is made to appear that the relator was detained by

virtue of an executive warrant issued by the Governor of this state upon the requisition of the Governor of the State of Massachusetts.

According to the testimony, relator, at Tampa, Fla., boarded a freighting vessel known as "Sic Vos Non Vobis," which was under Italian registration, flying the Italian flag, and apparently manned by Italian subjects. Relator was employed for service on the vessel which was bound for Italy, but which stopped at New Orleans, La. While there, one George Lacy, a deputy sheriff of Texas, who, having no papers for the arrest of the relator and no connection with the constabulary of the State of Louisiana, arranged with a custom-house officer at New Orleans to induce some person in authority on the vessel to send the relator ashore. The custom-house officer went aboard the vessel and requested the second officer in charge to send the relator to the custom-house for the purpose of having papers touching the cargo authenticated. The second officer directed the relator to go to the custom-house, and accompanied him thereto. Upon their arrival at the custom-house, the relator was forcibly taken in custody by George Lacy, who afterward took him to a hotel and then brought him to the city of Houston, Texas, where complaint was made charging that he was a fugitive from justice. Relator applied for a writ of habeas corpus, but before the hearing took place, the Governor of this state issued an executive warrant upon the requisition of the Governor of the State of Massachusetts. There is some slight conflict in the evidence but the foregoing is a sufficient preliminary statement of the facts.

The executive warrant issued by the Governor of this state is formal in every particular. The burden, therefore, rests upon relator, by evidence, to overcome the presumption that it was issued upon proper authority. See Ex Parte Haynes, 98 Tex. Crim. Rep. 609; Ex Parte Nix, 85 Tex. Crim. Rep. 307; Hibler v. State, 43 Tex. Crim. Rep. 197; Ex Parte Denning, 50 Tex. Crim. Rep. 629; Ex Parte Roselle, 87 Tex. Crim. Rep. 470; Ex Parte Cragolla, 97 Tex. Crim. Rep. 10. In the present case, to rebut the presumption, the certificate of the Secretary of State of Texas, accompanied by a copy of the indictment filed in the State of Massachusetts with the application for extradition is relied upon. In neither the certificate nor the proof is there found anything to support the contention that the copy of the indictment was not properly authenticated. Nor does it appear from the entire record that there were not before the Governor, at the time of the granting of the requisition, papers independent of the certified copy mentioned adequate to support the Governor's warrant.

The law did not demand that the Governor file with the Secretary of State all papers in her possession upon which she acted in granting the requisition. Nor, as above stated, does the certificate of the Secretary of State nor the proof show that there was not filed with her by the Governor other papers which induced her action. Under these circumstances the presumption mentioned is not overcome. See Ex Parte Carroll, 86 Tex. Crim. Rep. 301; Ex Parte Roselle, 87 Tex. Crim. Rep. 470; Ex Parte Jones, 82 Tex. Crim. Rep. 627; Ex Parte Haynes, 98 Tex. Crim. Rep. 609.

Upon the remarks and authorities last above made, the claim of the appellant that the indictment charges no offense might be dismissed because, in the absence of proof that it was improperly issued, the validity of the executive warrant cannot be successfully attacked. The claim that the copy of the indictment which was exhibited upon the trial charged no offense is based upon the presumption that the law of Massachusetts and that of Texas are identical, and that the averment "did steal money of the amount of the value of $1,000" would, under the law of Texas, not be sufficient to charge the offense of theft. Upon this subject we are not left to presumption, for it affirmatively appears that the statutory law of Massachusetts, unlike that of Texas, authorizes an amendment of an indictment setting out the particulars of the transaction upon which the prosecution is founded. Moreover, we do not understand that a collateral attack by way of habeas corpus can prevail against an indictment which purports to charge an offense coming within the purview of the statute upon the subject of extradition. There may be exceptions to this rule where treaty relations are involved. Ex Parte Royall, 117 U. S. 241. But the general rule precludes an inquiry into the validity of an indictment on account of the verbiage in which it attempts to charge the offense. See Henry v. Henkel, 235 U. S. 219, 59 Law Ed. 204; Royall v. Virginia, 121 U. S. 104; Ex Parte Pearce, 32 Tex. Crim. Rep. 301; Pearce v. Texas, 155 U. S. 311; Ex Parte Nix, 85 Tex. Crim. Rep. 309.

Against the detention the point is made that the relator is a citizen of the kingdom of Italy and that his apprehension under the circumstances above named was violative of the treaties between the United States of America and the kingdom of Italy. The treaty names the extraditable offenses agreed upon, and fails to mention the offense of theft or larceny. From the treaty the following quotation is taken:

"Article 17. All vessels sailing under the flag of the United

States, and furnished with such papers as their laws require, shall be regarded in Italy as vessels of the United States, and, reciprocally, all vessels sailing under the flag of Italy, and furnished with the papers which the laws of Italy require, shall be regarded in the United States as Italian vessels."

The articles referred to and that quoted are the only parts of the treaty which were set up in the pleading or proved upon the trial. We have not been referred to, nor are we aware of, any authority which would bring the present transaction within any of the exceptions or exemptions to the operation of the applicable principles of international law, which we find stated in a textbook thus:

"But when a private ship enters a foreign jurisdiction, it becomes at once with all on board, in the absence of treaty stipulations to the contrary, subject to the laws and control of the country it visits, and any crime committed there may be punished by the local laws, for the right to enter on and navigate the waters of any country is subject, in all cases, to the condition of temporary obedience to its laws." (Ruling Case Law, Vol. 8, Sec. 64, p. 103.)

"It is a part of the law of civilized nations that when a merchant vessel of one country enters the ports of another for the purposes of trade, it subjects itself to the law of the place to which it goes, unless by treaty or otherwise the two countries have come to some different understanding or agreement. As the owner has voluntarily taken his vessel for his own private purposes to a place within the dominion of a government other than his own, and from which he seeks protection during his stay, he owes that government such allegiance for the time being as is due for the protection to which he becomes entitled. It has been the uniform practice for the courts of the country of which the port is part to punish crimes committed by one foreigner on another in a foreign merchant ship." (Ruling Case Law, Vol. 15. Sec. 49, p. 136.)

Upon this proposition, see also Exchange v. McFaddon, 7 Cranch 116; Wildenhus v. United States, 210 U. S. 1; United States v. Dickelman, 92 U. S. 520; Mahon v. Justice, 127 U. S. 700; Barrington v. Missouri, 205 U. S. 587; Dallemagne v. Moisan, 197 U. S. 169, 49 L. Ed. 709.

We are not called upon to determine the status of the relator had be been arrested by authority of the United States Government or the state government upon the vessel in port, nor if he had been seized by a trespasser while upon the vessel. He was not upon the vessel. He was not seized by the government at

all or any authorized agent of the government. Lacy, in seizing the relator, was a trespasser. See Ker v. Illinois, 119 U. S. 436; Dominguez v. State, 90 Tex. Crim. Rep. 92. Moreover, the evidence adduced upon the habeas corpus hearing would sustain the conclusion that the relator's apprehension and detention was not without the consent but with the acquiescence of an officer of the ship who directed the relator to go with him to the customhouse.

The relator's situation before the courts of this state is that of one who was abducted or kidnaped in another state and brought into this one. The fact that one was kidnaped in another state by an individual not acting under the governmental authority is not regarded in this state as a reason for releasing a fugitive from justice in a habeas corpus proceeding. See Brookin v. State, 26 Tex. Crim. App. 121; Ex Parte Wilson, 140 S. W. 98, 36 L. R. A., (N. S.) 243; Ex Parte Bergman, 60 Tex. Crim. Rep. 8; Innes v. Tobin, 240 U. S. 127; Ker. v. Illinois, 119 U. S. 436; Lascelles v. Georgia, 148 U. S. 543; Mahon v. Justice, 127 U. S. 700; Kingen v. Kelley, (Wyo.) 15 L. R. A., 193; Baker v. State, 88 Wisconsin, 147.

It is argued that the precedents in support of the right of a state to proceed to try a fugitive from justice who was abducted or kidnaped in a foreign country and brought directly into the state in which he is charged with crime are not applicable to the present facts for the reason that the relator, upon his abduction, was not taken into the State of Massachusetts, where he was charged with an offense, but was first taken to Louisiana and then to Texas. The principle upon which the precedents mentioned rests is that a fugitive from justice has no absolute right of asylum. The fact that he comes into custody by the trespass of an individual affords him no immunity from prosecution. His remedy is not to avoid a trial under the indictment against him but to proceed against the trespasser or kidnaper. This was definitely announced by the Supreme Court of the United States in Ker's case, supra. The identical point raised by the relator, namely, that while he would be amenable to prosecution in Texas, there would be no jurisdiction of the Texas courts to surrender him upon the requisition of the State of Massachusetts, has not come to our attention. However, on the facts, the case of Ker v. Illinois, supra, is not dissimilar. Ker was seized in Peru by one Julian and was carried to the State of California. After his arrival in California, and while still a prisoner of Julian, Ker was surrendered to the agent of the State of Illinois upon a warrant issued by the Governor of California upon the requisition of the Governor of Illinois. His conviction

in the court of the State of Illinois was affirmed by the Supreme Court of the United States. The principle there announced has been applied by the courts in many instances. See Rose's Notes on U. S. Rep. Revised Edition, Vol. 13, p. 699.

Our investigation of the facts and authorities leads us to the conclusion that it is the duty of this court to affirm the judgment remanding the relator to custody, which is accordingly done.

*Affirmed.*

## ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Most of the complaints appearing in relator's motion for rehearing would have both force and application if the relator was now held by the officers, as in the attitude when he was first brought into Texas, but he is not now so held. He is in custody only by virtue of an executive warrant issued by the Governor of this state upon requisition from the Governor of Massachusetts. It is in testimony that when arrested in Louisiana relator agreed, when offered the privilege of going to jail in Louisiana or being brought to Texas, that he be brought to Texas. It is immaterial, as we view the decision of this question, how the relator got into Texas. We are not impressed by any claim that he was kidnaped or forcibly brought into either Louisiana or Texas.

Relator complains that we did not pay any attention to a bill of exceptions taken by him to the action of the trial court in permitting the respondent to introduce in evidence a part of the statutes of Massachusetts, after both sides had closed the introduction of testimony. It is the universal holding of this court that in habeas corpus matters we are not governed by ordinary rules or forms of trial. The matters involved are before the court, and we conceive it proper for the court to obtain and have before him all the light possible before he rules upon the question involved in the application for habeas corpus. We would have to be convinced that the trial court had permitted one side to introduce some evidence, and had then refused the opposite side the opportunity to introduce its evidence upon the same question before we would consider such complaint of the manner of the trial.

Relator complains again of the insufficience of the indictment, a copy of which was presented to the Governor of Texas, and appears in this record. Under the laws of Massachusetts it is not necessary that an indictment for theft do more than to state that the accused did steal a certain sum of money from a certain

person.   This appears in the indictment in question.   See Chapter 277, General Laws of Massachuetts, 1921; Commonwealth v. Quinn, 222 Mass. 504.   In said Chapter 277 appears numerous statutory provisions relating to the furnishing of the accused with a bill of particulars, if he desires to know more in detail the charge against him, and for amending both the bill of particulars, indictment, etc.

Being unable to agree with any of relator's contentions, and conceiving that the case has been properly disposed of, relator's motion for rehearing will be overruled.

*Overruled.*