370 So.2d 1195 (1979)
STATE of Florida, Appellant,
v.
Arthur SHIPMAN and Frederick A. Pierce, Appellees.
No. 77-1493.
District Court of Appeal of Florida, Fourth District.
May 2, 1979.
Rehearing Denied June 13, 1979.
Michael J. Satz, State's Atty. and William W. Herring and Patti Englander, Asst. State's Attys., Fort Lauderdale, for appellant.
Fred Haddad, of Sandstrom & Haddad, Fort Lauderdale, for appellees.
ANSTEAD, Judge.
This appeal from an order granting a motion to suppress involves the legality of an arrest made by a municipal police officer outside his territorial jurisdiction.
On December 21, 1976, Fort Lauderdale police officer Puleo, working undercover and acting on information supplied by an informant, met with Dennis Dalicandro at Meyer's Pizza Restaurant in Pompano Beach to set up a drug buy. Puleo purchased an ounce of marijuana from Dalicandro and arranged for the purchase of one hundred (100) pounds of marijuana on the following night. The Broward County Sheriff's Office agreed to assist in monitoring the transaction. The next night, Puleo, accompanied by fellow Fort Lauderdale Officer Dionisi, met Dalicandro at Meyer's Pizza. Puleo was wired with a body bug which was being monitored by two other Fort Lauderdale police officers. Puleo and Dionisi were taken by Dalicandro to a 7-11 store in Pompano Beach, where Dalicandro placed numerous phone calls to "somebody." At 11 p.m. Dalicandro announced that "the stuff is ready" and directed the officers to a residence in Pompano Beach.
*1196 Upon arrival, Puleo was requested to take Michael Knieper outside to the trunk of Puleo's car to show Knieper the money to be used for the purchase. Appellee Frederick Pierce arrived shortly thereafter and was also taken outside to see the money. While Puleo and Pierce were outside, appellee Arthur Shipman arrived and carried a large plastic bag into the residence. Puleo and Pierce were directed to follow. Once inside, Puleo opened up the bag and found a large quantity of marijuana. At that point, two other alleged participants in the drug deal, James Morris and James Gelski, ran into the room, yelling "the cops are here" and all six subjects began fleeing the apartment out the rear door. Puleo chased after and forcibly brought Dalicandro back into the house.
Puleo then opened the front door and let Deputy Sheriff Lillard and other police officers inside. The other five alleged offenders were then brought back inside, apparently by a combined force of Ft. Lauderdale police officers and sheriff's deputies. Puleo at first conceded that he had made the arrests, but then testified that Deputy Lillard was the first to formally advise the subjects that they were under arrest. Shipman was then searched by Deputy Lillard and approximately an ounce of cocaine was discovered and seized along with the marijuana in the plastic bag. Puleo testified that at no time prior to the arrest of the subjects had he announced his authority as a police officer.
The lower court concluded that the Fort Lauderdale Police Department had no jurisdiction to carry on an investigation and arrest which started and ended in Pompano Beach and granted appellees' motion to suppress the drugs seized.
The state contends that Officer Puleo made a lawful citizen's arrest of the appellees and that the subsequent search was incident to that lawful arrest. Before examining the state's contentions, we must first consider the trial court's finding of fact that it was Officer Puleo and not Deputy Lillard of the Broward County Sheriff's Office who effected the arrests. This finding of fact is presumed to be correct and should not be disturbed unless clearly erroneous. Cameron v. State, 112 So.2d 864 (Fla. 1st DCA 1959). We find that there was ample evidence to support the lower court's conclusion that Puleo had effected the arrest by "containing" the suspects and pointing out who he wanted arrested, and that Lillard's uttering of the magic words "you're under arrest" did not constitute the point at which appellees were taken into custody.
Upon leaving Fort Lauderdale, Puleo had no authority or power as a police officer. At the time of the arrest, Puleo's authority was no greater than that of a private citizen. Collins v. State, 143 So.2d 700 (Fla. 2d DCA 1962). In Collins the Second District Court of Appeal noted:
It is likewise true that police officers outside their jurisdictional territory may make an arrest as private persons where a private person could lawfully make an arrest. A private citizen does have the common law right to arrest a person who commits a felony in his presence, or to arrest a person where a felony has been committed, and where the arresting citizen has probable cause to believe, and does believe, the person arrested to be guilty. Even though there was time to obtain a warrant, a private citizen may make such an arrest and justify his failure to obtain a warrant by proving the person arrested was actually guilty of the felony. (Emphasis added; citations omitted) (Id. at 703)
See also State v. Williams, 366 So.2d 135 (Fla. 2d DCA, opinion issued January 10, 1979); State v. Jimerson, 330 So.2d 169 (Fla. 4th DCA 1976); and State v. Crum, 323 So.2d 673 (Fla. 3d DCA 1975). However, Puleo's actions would not be sustainable as those of a private citizen if Puleo was acting "under color of his office" at the time he observed the felonious conduct which resulted in the subsequent arrest. State v. Crum, supra. "Under color of office" refers to a law enforcement officer actually holding himself out as a police officer, by either wearing his uniform or in some other manner openly asserting his official *1197 position, in order to observe the unlawful activity involved or the contraband seized. Here, as in Crum, the police officer acted at all times as a private citizen (i.e., an undercover agent). Prior to the arrests he never disclosed his official identity to the participants in the transaction. While Puleo may have been acting consistent with his police duties in wiring himself for sound; grabbing the last subject who ran out the door and forcing him back inside at gunpoint; letting the officers in through the front door; and finally designating for Deputy Lillard which persons rounded up were involved; that activity was nothing different from what a private citizen could have done had he observed the same unlawful conduct. Officer Puleo was admitted as a private citizen, and once having observed a felony committed in his presence, while he was acting as a private citizen, was not obliged to let the offenders escape, whether or not that meant forcing them back into the house.
While we have concluded that the arrest in this case was lawful, we must note that we share the trial judge's concern for the apparent increase of activity by municipal police officers outside their jurisdiction. We recognize the legitimate need of police officials to detect, follow and arrest offenders wherever they may go, especially in today's society where illicit drug operations and other organized criminal activities are not conveniently conducted within the confines of a single jurisdiction. However, it would appear that there are numerous official ways whereby police authorities may be deputized or granted extra territorial police powers when it becomes necessary. It seems rather ludicrous for police officials to have to rely on a citizen's authority to justify an arrest made in the culmination of an official police operation.
For the reasons set out above, the order of suppression is reversed with directions that further proceedings be in accord with this opinion.
BERANEK, J., and SIEGENDORF, ARDEN M., Associate Judge, concur.