428 So.2d 262 (1982)
STATE of Florida, Appellant,
v.
Michael Harrison PHOENIX and Steven Michael Trusz, Appellees.
STATE of Florida, Appellant,
v.
Morton Neal HALL, Jr., Appellee.
STATE of Florida, Appellant,
v.
Richard HALE, Appellee.
Nos. 80-195, 80-385 and 80-386.
District Court of Appeal of Florida, Fourth District.
November 10, 1982.
Rehearing Denied March 30, 1983.
*264 Jim Smith, Atty. Gen., Tallahassee, and Mark Horn, Asst. Atty. Gen., West Palm Beach, for appellant.
Max P. Engel of Law Offices of Max P. Engel, Miami, for appellees.
HURLEY, Judge.
The State appeals from orders suppressing the use of certain evidence against the defendants in several criminal cases. The determinative question on appeal is whether police officers who conducted a covert surveillance outside their jurisdiction could make valid "citizen's arrests" even though they used a marked police car and asserted their official position in stopping the arrestees. We answer in the affirmative so long as the probable cause justifying the arrests was lawfully obtained. Because the trial court's orders were based on a different view of the law, we must reverse.
The Martin County sheriff and his officers conducted a covert surveillance of certain activity in St. Lucie County which they believed to be a smuggling operation. The surveillance began around 1:00 a.m. in Martin County when the sheriff of Martin County became suspicious on hearing over his police radio that one of his officers had observed gas cans in the camper covered cargo area of a pickup truck (hereinafter the white camper-truck). The sheriff ordered his officers to follow it. One of the officers, who was piloting Martin County's surveillance aircraft, observed the vehicle cross into St. Lucie County, but the pilot soon lost sight of it when, apparently, the truck lights were extinguished. Various other Martin County officers participated in the surveillance which continued through the early morning hours. Just across the line into St. Lucie County, the sheriff and his officers discovered that a gate chain had been cut and a new lock inserted. The gate blocked a road that led to an area of a ranch in St. Lucie County that could be used as an airstrip. Suspecting illegal activity, the sheriff and his officers waited outside the gate. Around 6:00 a.m., as day was breaking, the surveillance pilot spotted a small aircraft and two other camper-trucks (not the white camper-truck) on the airstrip. At this point, the sheriff first made an effort to notify St. Lucie County authorities of the suspected smuggling operation. Before the St. Lucie County authorities arrived, the suspect aircraft and the two "airstrip" camper-trucks began to leave. One of these trucks headed north further into St. Lucie County; the other headed south towards Martin County. The sheriff and an officer pursued the northbound truck and stopped it in St. Lucie County by using the blue flashing lights of their police car. Guns drawn and pointed, they identified themselves as police officers, ordered the occupants to get out of the truck and lie face down in the grass, and opened the back of the truck where they discovered marijuana. A little later the arrestees were turned over to a St. Lucie County officer who had been flagged down *265 while on routine patrol. Meanwhile, another Martin County officer pursued the southbound camper-truck and eventually stopped it and arrested the occupants in Martin County.
The defendants filed motions in the trial court to suppress evidence. The trial court concluded that the stop and search of the camper-truck in St. Lucie County was unlawful because the officers were acting "under color of office" outside their jurisdiction. Consequently, the court suppressed the evidence found in that truck. The court also suppressed other evidence, including evidence found in the aircraft and the second "airstrip" camper-truck, and a confession because that evidence had been tainted by the illegal arrest in St. Lucie County, i.e., the other evidence and confession were "fruit of the poisonous tree."
As a preliminary matter, we note that the actions of the sheriff and his officer prior to the search of the camper-truck stopped in St. Lucie amounted to an arrest of the occupants for purposes of the exclusionary rule. See McAnnis v. State, 386 So.2d 1230, 1232 (Fla. 3d DCA 1980). The question we must address is whether the sheriff and his officer had the power to lawfully arrest those occupants.
As a general principle, public officers of a county or municipality have no official power to arrest an offender outside the boundaries of their county or municipality. State v. Shipman, 370 So.2d 1195, 1196 (Fla. 4th DCA 1979), cert. denied, 381 So.2d 769 (Fla. 1980).
One exception to this general principle, which the state urges us to apply here, is that officers can make an official arrest outside their jurisdiction when in fresh pursuit.[1] § 901.25, Fla. Stat. (1979). The fresh pursuit exception allows officers, who attempt to detain or arrest within their territorial jurisdiction, to continue to pursue a fleeing suspect even though the suspect crosses jurisdictional lines. The power to arrest after fresh pursuit presupposes that the officers had legally sufficient grounds to detain or arrest before they left their jurisdiction.
In the present case, the trial court found that the sheriff and his officers did not have legally sufficient grounds to detain or arrest the defendants before they left Martin County. The court also found that the arrests in St. Lucie County were not made in fresh pursuit. Based on these findings, the trial court correctly concluded that the officers had no official power to arrest the occupants of the camper-truck stopped in St. Lucie County.
In addition to any official power to arrest, police officers also have a common law right as citizens to make so-called citizen's arrests. State v. Shipman, supra. We do not mean to imply that police officers acting outside their jurisdictions are treated as private persons for the purposes of the exclusionary rule. Rather, we mean that the Legislature, by vesting police officers with official powers, did not intend to divest the officers of their common law right as citizens to make arrests.
Under the common law as it exists in Florida, private persons can arrest for a felony in two situations. Private persons can arrest (1) for a felony committed in their presence and (2) for a felony that they know was committed if they have probable cause to believe and do believe that the person arrested perpetrated the felony. State v. Shipman, supra; State v. Chapman, 376 So.2d 262 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 642 (Fla. 1980). But private persons, even if they know a felony was committed, have no right to stop, much less arrest, a suspect on the grounds of founded suspicion alone. State v. Schuyler, 390 So.2d 458, 460 (Fla. 3d DCA 1980).
In the sense that an arrest normally results from a police investigation, it can be *266 said that the power of officers to make a valid citizen's arrest is circumscribed by the "under color of office" doctrine. But that doctrine is more accurately understood if it is viewed as a limitation on the power of police to conduct investigations and to gather evidence outside their jurisdiction.
Pursuant to the "under color of office" doctrine, police officers acting outside their jurisdiction but not in fresh pursuit may not utilize the power of their office to gather evidence or ferret out criminal activity not otherwise observable.[2]McAnnis v. State, 386 So.2d 1230, 1232 (Fla. 3d DCA 1980); State v. Shipman, 370 So.2d 1195, 1196-97 (Fla. 4th DCA 1979), cert. denied, 381 So.2d 769 (Fla. 1980); Collins v. State, 143 So.2d 700, 703 (Fla. 2d DCA), cert. denied, 148 So.2d 280 (Fla. 1962). The purpose of this doctrine is to prevent officers from improperly asserting official authority to gather evidence not otherwise obtainable. Thus, when officers unlawfully assert official authority, either expressly or implicitly, in order to gain access to evidence, that evidence must be suppressed. Wilson v. State, 403 So.2d 982 (Fla. 1st DCA 1980) (obtaining search warrant by signing affidavit as police officer); State v. Schuyler, 390 So.2d 458, 460 (Fla. 3d DCA 1980).
An arrest based on evidence obtained by the unlawful assertion of official authority is likewise illegal; and any "fruits" of that arrest must be suppressed as "fruits" of the unlawful assertion of authority. Because of this result, the language of the case law indicates that the "under color of office" doctrine limits the power to arrest. But this doctrine does not prevent officers from making an otherwise valid citizen's arrest just because they happen to be in uniform or otherwise clothed with the indicia of their position when making the arrest. When officers outside their jurisdiction have sufficient grounds to make a valid citizen's arrest, the law should not require them to discard the indicia of their position before chasing and arresting a fleeing felon. Any suggestion that officers could not make a valid citizen's arrest merely because they happened to be in uniform or happened to be in a police car at the time they inadvertently witnessed a felony outside their jurisdiction would be ridiculous. See State v. Williams, 366 So.2d 135 (Fla. 2d DCA 1979).
In the present case, the trial court was apparently misled by language in the case law. The court concluded that the sheriff and his officer were powerless to make a valid citizen's arrest because they used police equipment to conduct a covert surveillance outside their jurisdiction and because they used blue lights and identified themselves as officers in making the arrests. But the record also reveals, and the trial court did not find to the contrary, that at the time the occupants of the St. Lucie County truck were arrested, the sheriff and his officers had not asserted their official position for any purpose other than to make the arrests. The evidence upon which the arrests were based was obtained before confronting any persons in St. Lucie County and without any unlawful assertion of official authority vis-a-vis the occupants or a third party. See State v. Pinoamador, 389 So.2d 317, 318 (Fla. 3d DCA 1980). Thus, the evidence upon which the officers sought to justify the arrests was not unlawfully obtained in violation of the "under color of office" doctrine, and the trial court erred in concluding that the officers were powerless *267 to make citizen's arrests.[3] Moreover, the mere use of a police car and the fact that the officers identified themselves as officers in stopping the camper-truck is not enough to prevent them from making valid citizen's arrests. Accordingly, we reverse and remand for further proceedings in which the trial court should determine, among other things, whether the officers had sufficient and validly obtained grounds to make citizen's arrests.
The trial court's decision to suppress the marijuana and other evidence discovered in the camper-truck stopped in St. Lucie County was based, at least in part, on the finding that the stop was illegal because made in violation of the "under color of office" doctrine. Because we have reversed that finding and remanded for further proceedings on the question of whether the stop can be justified as a citizen's arrest, we also remand the question of whether the search made as part of that stop was unlawful.
The trial court also suppressed a confession and evidence obtained from the aircraft and the second "airstrip" camper-truck because they were tainted by the illegal stop of the camper-truck in St. Lucie County. Because we have remanded for further proceedings to determine if the stop can be justified as a citizen's arrest, we must also remand for further proceedings to determine whether the confession and other evidence are tainted.
To summarize, we hold that when officers acting outside their jurisdiction have valid grounds to make a citizen's arrest, the law does not require them to discard the indicia of their position before chasing after and subduing a criminal. We reverse the trial court's suppression orders and remand the case for further proceedings.
REVERSED AND REMANDED.
DOWNEY and DELL, JJ., concur.

ON MOTION FOR REHEARING
We deny appellees' motion for rehearing and, pursuant to Article V, Section 3(b)(4) of the Florida Constitution, we certify the following question, which we have answered in the affirmative, to be of great public importance.
Can an arrest be validated as a "citizen's arrest"
(1) if the arrest resulted from an intentional surveillance conducted by police officers outside their jurisdiction utilizing a police aircraft and officers on the ground and,
(2) if the police officers used a marked police car and asserted their official position in stopping the arrestees?
DOWNEY, HURLEY and DELL, JJ., concur.
NOTES
[1] Another important exception is embodied in § 901.18, Fla. Stat. (1979). Pursuant to this section, persons acting on the commands of a police officer have the same authority to arrest as the police officer. In the present case, however, there is no suggestion that the officers were acting under the directions of any officers with jurisdiction in St. Lucie County.
[2] We recognize the line of cases holding that municipal police officers may conduct a lawful investigation outside their territorial jurisdiction if the subject matter of the investigation originated in their own jurisdiction. Goodman v. State, 399 So.2d 1120 (Fla. 4th DCA 1981); State v. Chapman, 376 So.2d 262 (Fla. 3d DCA 1979), cert. denied, 386 So.2d 642 (Fla. 1980); Parker v. State, 362 So.2d 1033 (Fla. 1st DCA 1978), cert. denied, 373 So.2d 460 (Fla. 1979); Brenner v. State, 337 So.2d 1007 (Fla. 3d DCA 1976), cert. denied, 348 So.2d 944 (Fla. 1977). Nonetheless, the principle espoused in these cases is subject to the proviso set forth in the text of our opinion, viz., that officers who act outside their jurisdiction, but not in fresh pursuit, may investigate and gather evidence only through the use of their own senses and through the voluntary cooperation of citizens; they may not employ the power or color of their office either expressly or by implication in order to gather evidence or ferret out criminal activity not otherwise observable.
[3] We are troubled by the Martin County sheriff's failure to notify the St. Lucie County Sheriff's Office at an earlier stage of the investigation. See footnote 1, supra. Our decision is not meant to condone persistent intervention by one law enforcement agency into the jurisdiction of another. Should a pattern emerge, we believe that adequate means exist to redress such a transgression. See, e.g., 29A Fla.Jur., Sheriffs, Constables, Etc., § 6. Even so, today's decision is reached in part because we believe it impracticable to create a distinction between this case and those situations in which officers inadvertently witness felonies outside their jurisdictions.