473 A.2d 530

**Clifford WRIGHT a/k/a Clifton Wright**

v.

**STATE of Maryland.**

**No. 873, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

April 10, 1984.

448

Joseph F. Murphy, Jr., with whom were White & Murphy, Towson, on brief, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City, and John N. Prevas, Asst. State's Atty. for Baltimore City, on brief, for appellee.

Argued before GILBERT, C.J., and MOYLAN and ADKINS, JJ.

GILBERT, Chief Judge..

Clifford Wright, appellant, was indicted in Harford County for distribution of heroin, a violation of Md.Ann.Code art. 27, § 286(a)(1), and in Baltimore City for conspiracy to distribute in violation of the controlled dangerous substance laws, Md.Ann.Code art. 27, § 290. Judge Karwacki, an associate judge of the Circuit Court for Baltimore City, was specially designated to sit as the Circuit Court for Harford County because the cases involved the same issues. Wright's pretrial suppression motions were denied by the court on February 1, 1983. At the conclusion of the nonjury trial, Judge Karwacki convicted Wright of both distribution of heroin in Harford County and of the conspiracy in Baltimore City. Wright was sentenced to concurrent twelve year terms of imprisonment.

In his appeal to this Court, Wright asserts:

1) The trial court erred in denying his motion to suppress evidence derived from the January 29, 1982, wiretap order;

2) The trial court erred in denying his motion to suppress evidence seized pursuant to his arrest in Cecil County on February 11, 1982.

### The Facts

A wiretap order was issued on January 29, 1982, by the then Criminal Court of Baltimore (Allen, J.), after a review of an affidavit which led Judge Allen to deduce that probable cause existed to believe that Cornelia Fryson and others were engaged in a conspiracy to violate the controlled dangerous substance laws of Maryland.[1]

---

1. The affidavit in support of the application for a wiretap order was 74 pages long and was supported by 477 pages of exhibits. The investigation by the Baltimore City Police Department, which led to the application, had begun in the fall of 1981. The investigation had involved the issuance of four search and seizure warrants, months of physical surveillance and infiltration, a variety of informants and utilization of a pen register, prior to the request for the wiretap in the instant case.

As a result of conversations overheard in the course of the electronic surveillance, Baltimore City police officers learned of a drug transaction that was to occur during the early morning hours of February 11, 1982. On that morning Cornelia Fryson was observed entering a "white over red" Cadillac. Fryson drove, via the Baltimore Beltway and Interstate 95, to the Maryland House Restaurant located in the median strip between north and southbound Interstate 95. Fryson was seen flashing her headlights in the direction of a light colored Pontiac automobile. Several seconds later, Fryson and the driver of the Pontiac, a man, met and talked to one another. They then entered the Maryland House. After a few minutes, Fryson and the man, later identified to be the appellant Clifford Wright, returned to their respective cars and drove to the gasoline pump area. There Wright and Fryson exchanged brown bags. Wright gave a plastic bag to Fryson by passing it through the window on the driver's side of her car and at the same time took a paper bag from her and "tossed it onto the front seat of his car." Wright and Fryson then left the area; Fryson travelled south while Wright proceeded north.

Detective John Tewey of the Baltimore City Police Department believed he had witnessed a drug transaction, so he notified his surveillance team, who followed Fryson. Tewey, in his own private vehicle, followed Wright. Tewey attempted to contact the local Maryland State Police, but was unable to so do. When Tewey and Wright reached the toll booth in Cecil County, Tewey got out of his car and with his gun drawn, ordered Wright out of the Pontiac. Within a minute, a Maryland State Police Trooper arrived and took custody of Wright. Tewey then observed a brown paper bag on the front seat of the Pontiac where he had seen Wright toss it. The bag was found to contain $12,000. That information was relayed to the surveillance team members who were following Fryson. Fryson was stopped and arrested in Baltimore County where the brown plastic bag was seized and found to contain a "large quantity of white powder suspected to be heroin and cocaine." A laboratory

analysis revealed that 5.8 ounces of heroin and 4.11 pounds of "cutting agent" constituted the white powders found in the plastic bag.

## I.

Wright avers that the circuit court erred in denying his motion to suppress the evidence derived from the wiretap order issued on January 29, 1982. Specifically, Wright denies the validity of the wiretap order, arguing that the affidavit, from which the order issued, failed to establish that the telephone was used in connection with illegal activity, and, therefore, there was no probable cause to issue the order. We do not reach the merits of Wright's contention because he has no standing to challenge the validity of the wiretap order.

Md.Cts. & Jud.Pro.Code Ann., § 10–408(i)(1) states:

"Any *aggrieved person* ... may move to suppress the contents of any intercepted wire or oral communication, or evidence therefrom ...." (Emphasis supplied.)

An "aggrieved person" is not "any ... person," but rather one "who was a *party* to any intercepted wire or oral communication or a person against whom the interception was directed." Md.Cts. & Jud.Proc.Code Ann., § 10–401(10). (Emphasis added.)

Maryland's Wiretapping and Electronic Surveillance Act, enacted in 1977, is modeled after its federal counterpart and "extensively tracks its provisions." *Sanders v. State,* 57 Md.App. 156, 469 A.2d 476 (1984); *Wood v. State,* 290 Md. 579, 431 A.2d 93 (1981). *See also* R. Gilbert, *A Diagnosis, Dissection and Prognosis of Maryland's New Wiretapping and Electronic Surveillance Law,* 8 U.Balt.L.Rev. 183 (1979). In fact, the definition of "aggrieved person" under the federal act is copied verbatim into § 10–401(10). *See* 18 U.S.C. § 2510(11).

Cases interpreting the federal statute have stated, "any petitioner would be entitled to the suppression of government evidence originating in electronic surveillance ... if

the . . . [government] unlawfully overheard conversations of a petitioner himself or conversations occurring on his premises, whether or not he was present or participated in those conversations," *Alderman v. United States,* 394 U.S. 165, 176, 89 S.Ct. 961, 968, 22 L.Ed.2d 176 (1969), *United States v. Cruz,* 594 F.2d 268 (1st Cir.1979), or if he was named in the wiretap order. *United States v. Fury,* 554 F.2d 522 (2nd Cir.1977).

■ It is clear from the record that Wright was never a party to any call made to or from the tapped telephone and that he was not named in the wiretap order. Wright, therefore, has no standing to attack that order. Judge Karwacki properly denied Wright's motion.

## II.

Wright maintains that the trial judge erred when he refused to suppress evidence that was obtained when a Baltimore City police officer made an *ultra vires* arrest in Cecil County. That arrest, Wright asserts, was illegal and the "fruits" derived therefrom should have been suppressed.

That the Baltimore City police officer lacked authority, as a police officer, to make an arrest outside the geographical territory in which he is an officer is beyond serious question. *Stevenson v. State,* 287 Md. 504, 509, 413 A.2d 1340 (1980). *See also* Md.Code art. 88B, § 4; Code of Public Local Laws of Baltimore City, art. 4, § 16–2.

There was at common law a limited exception to that general proposition regarding extraterritorial arrest and that exception arose when a police officer was in "hot pursuit" of a fleeing felon. *Stevenson v. State,* 287 Md. at 504, 413 A.2d 1340; *Gattus v. State,* 204 Md. 589, 600–01, 105 A.2d 661 (1954). By statute it is provided that peace officers of another State may, when in "fresh" pursuit of a fleeing felon, effect the felon's arrest in Maryland to the same extent as a police officer in this State. Md.Ann.Code art. 27, § 595. That section, however, applies only to interstate pursuit. *Gattus v. State, supra.* "In all other situations,

however, a peace officer who makes an arrest while in another jurisdiction does so as a private person, and may only act beyond his bailiwick to the extent that the law of the place of arrest authorizes such individuals to do so." *Stevenson v. State,* 287 Md. at 510, 413 A.2d 1340.

Until a decade ago a private citizen in this State had the authority to make a warrantless arrest when a felony had been committed in the citizen's presence, or when a felony had in fact been committed, and the arrester had probable cause to believe the arrestee was the perpetrator. This was true regardless of whether it occurred in the citizen's presence. Furthermore, a private citizen could make an arrest when a misdemeanor, amounting to a breach of the peace, was being committed in the view or presence of the arrester. *Stevenson v. State, supra* at 513, 413 A.2d 1340, quoting Kauffman, *The Law of Arrest in Maryland,* 5 Md.L.Rev. 125, 155 (1941). This limited rule has been modified to the extent that a private citizen presently "may make an arrest if he ... [has] reasonable grounds (probable cause) to believe that a felony ... [has been] committed and that the person ... [arrested] committed it." *Stevenson v. State,* 287 Md. at 520, 413 A.2d 1340.

■ Judge Karwacki correctly determined that Det. Tewey had probable cause to believe that a felony had been committed and that Wright committed it. Probable cause for a warrantless arrest exists "where the facts and circumstances within the ... [arrester's] knowledge and of which ... [he] had reasonably trustworthy information are sufficient in themselves to ... [permit] a man of reasonable caution ... [to believe] that an offense has been committed" by the person arrested. *Edwards v. State,* 196 Md. 233, 237, 76 A.2d 132 (1950).

■ Det. Tewey, as we have seen, observed Wright meet with Fryson at the Maryland House and respond to the signal she gave when she "flashed" her headlights. Tewey saw brown bags being exchanged between the two parties, and he further witnessed the speedy departure that Fryson

and Wright separately made from the scene. The detective, because of his training and experience in detecting narcotics trafficking, believed that he had viewed a narcotics transaction taking place. The transaction occurred during the early morning hours approximately thirty miles from Baltimore City. We think those facts are sufficient to have given Tewey probable cause to effect the arrest of Wright for narcotics violations.

Wright also argues that the arresting officers acquired probable cause only by virtue of the "color of their office," meaning, of course, that "but for" the information obtained from the conversations overheard via the wiretap, Detective Tewey would not have suspected that the transaction at the Maryland House was a narcotics transfer. We reject that argument.

It is far from clear whether Maryland recognizes the principle that an extraterritorial arrest by a police officer is not that of a private person if the officer is acting within the "color of his office." *Stevenson v. State,* 287 Md. at 511, 413 A.2d 1340, questioning the Florida doctrine enunciated in *State v. Shipman,* 370 So.2d 1195, 1196–97 (Fla.App.1979). If, however, the *Shipman* doctrine is followed in this State, it is pellucid that Det. Tewey was not operating "under color of office" as delineated in that case. "Under color of office" refers to a law enforcement officer actually holding himself out as a police officer, by either wearing his uniform or in some other manner openly asserting his official position, in order to observe the activity involved or the contraband seized." *State v. Shipman,* 370 So.2d at 1196.

What Tewey witnessed taking place at the Maryland House between Fryson and Wright was no more or less than any other private citizen in the parking lot would or could have seen had they looked. In today's society, a reasonable person, observing in the early morning hours the flashing of headlights by the operator of a car in the direction of another vehicle, followed by a rendezvous between the drivers and an exchange of packages, coupled with the depar-

ture by the drivers in opposite directions, would conclude that he had witnessed a drug "deal going down."

We cannot require that a police officer forget, ignore, or overlook conclusions or suspicions he draws as a result of his training. Private citizens also draw inferences that are influenced by and infused with their own areas of expertise or experience.

■ Even if we were to assume *arguendo* that the arrest of Wright by Det. Tewey was invalid, whether made as a police officer or as a private citizen, it is clear that a lawful arrest was made by the Maryland State Trooper who arrived at the toll booth immediately after Tewey had detained Wright. Perspicuously, Trooper Killough lawfully effected the arrest of Wright, Md.Code art. 88B, § 4, which, at worst, was an ingemination.

We hold that the evidence seized from Wright at the toll booth in Cecil County should not have been suppressed.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.