Ricky Hill appeals his conviction for public intoxication and his subsequent sentence to 30 days in the county jail, a $200 fine, and court costs. The state's evidence tends to show the following: On January 30, 1993, Blount County sheriff deputies, Mickey Ratliff and Andy Dutton, responded to a report of a domestic dispute. They arrived at the location and parked the patrol car on the side *Page 1025 
of the road. Hill was standing on the opposite side of the road with a woman who was holding a baby. According to Ratliff, he was making "grabbing hand motions" towards the woman holding the baby. According to Ratliff they appeared to be fighting. She turned on the patrol car's emergency lights and got out of the car. Hill and the woman holding the baby began to move away. When Ratliff ordered them to stop, they fled toward a nearby house. Ratliff chased them to the front porch of the house, where they stopped. She questioned them about the reported disturbance, and asked whether they were involved in a fight. During the course of this questioning, Ratliff determined that Hill was intoxicated, and she arrested him for public intoxication.
Ratliff placed Hill in the patrol car, and joined Dutton in investigating the domestic dispute. After the domestic matter was resolved, Ratliff and Dutton returned to the patrol car and took Hill to the Blount County sheriff's department. While en route to the sheriff's department, Hill initiated a conversation with Ratliff and Dutton. He told them that he had drunk only 12 beers, that he was not intoxicated, and that he would "have [the deputies'] jobs."
Hill raises the following issues on appeal: whether the trial court erred in denying Hill's motion to dismiss the complaint; whether the arrest was legal; whether the trial court erred in admitting Hill's extrajudicial statements; and whether the evidence was sufficient to support a guilty verdict.
 I.
Hill was convicted of public intoxication in a district court trial that proceeded under Ratliff's affidavit and complaint, which reads as follows:
 "Before me, the Clerk/Magistrate of the District Court of Blount County, Personally appeared this day Mickey Ratliff and made oath that he/she has probable cause for believing and does believe that in said State and County, and before the filing of this complaint, Rickey Hill, whose name is not known to the affiant other than as stated, did appear in a public place under the influence of alcohol, narcotics or other drug to the degree that he endangered himself or others or property; or by boisterous and offensive conduct annoyed others in violation of Title 13A-11-10 of the Code of Alabama. Which said offense was committed against the peace and dignity of the State of Alabama."
Hill filed a notice of appeal from the district court's judgment on April 1, 1993. Hill concedes that this affidavit complaint was timely filed with the circuit court. See Rule 30.4(a), Ala.R.Crim.P. (requiring these documents to be filed with the circuit court within 14 days after notice of appeal from district court).
On April 23, 1993, Hill filed a motion to dismiss the complaint, alleging that it does not sufficiently state the facts supporting the charge. In his brief, Hill argues that when he filed this motion, "it being more than fourteen days after the Notice of Appeal, the Affidavit and Complaint of Deputy Ratliff was the charging instrument."
On April 29, 1993, the district attorney filed a solicitor's complaint, which states:
 "Comes now the State of Alabama by and through its District Attorney, and states as follows: that within the past twelve months, Ricky Hill, whose true name is otherwise unknown to the affiant, did appear in a public place, to-wit: a public road at or near Highway #231 South, Blount County, Alabama, on January 30, 1993, under the influence of alcohol, narcotics or other drug to the degree that he endangered himself or Deputy Mickey Ratliff, violation o[f] § 13A-11-10 of the Code of Alabama, contrary to law and against the peace and dignity of the State of Alabama."
We regard the solicitor's complaint to be an amendment of the previous complaint.
Rule 13.5, Ala.R.Crim.P., states, in pertinent part:
 "The court may permit a charge to be amended without the defendant's consent, at any time before verdict or finding, if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced."
The original complaint was not amended to charge an additional offense. The only *Page 1026 
change resulting from the amendment was the addition of facts supporting the charge. In Peoples v. State, 527 So.2d 169
(Ala.Cr.App. 1988), cert. denied, Peoples v. Alabama,488 U.S. 972, 109 S.Ct. 506, 102 L.Ed.2d 542 (1988), this court held that an amendment adding facts in support of the charge was not prejudicial to the defendant's substantial rights.
Furthermore, Hill did not object to going to trial on the amended complaint. The record contains the following colloquy, which occurred immediately before trial:
 "THE COURT: . . . . Now we have a motion to dismiss the complaint.
 "[HILL'S ATTORNEY]: We rely on the holding of Critenden v. State. The mere wording of the Code is a conclusion and does not set forth facts which constitute an offense. These are merely conclusionary statements.
 "THE COURT: (Reading from the complaint) 'He appeared in a highway on 231 South, Blount County, Alabama, on January 30th under the influence of alcohol and he endangered himself and a deputy, Mickey Ratliff.' This is the solicitor's complaint.
"[HILL'S ATTORNEY]: I have not seen that.
 "THE COURT: That motion is overruled. The Court finds the solicitor's complaint to be adequate to apprise the defendant of the date, time and place and all that. What else now?"
Although Hill contends that he had not seen the solicitor's complaint before it was read in court during the colloquy quoted above, the complaint includes a certificate of service which reflects that he was served with a copy of the complaint well in advance of the trial.
Because Hill never objected to the amended complaint, we question whether this issue is preserved for appellate review. However, even assuming that the issue was preserved, on the authority of Peoples, we find no merit in this issue.
 II.
Hill argues that his arrest was illegal, contending that Ratliff did not have probable cause to arrest him, and that Ratliff was outside of her jurisdiction when she did arrest him.
 A.
Ratliff testified that when she arrived at the location where there had been a report of a domestic dispute, she observed Hill and the woman standing in the road. The woman was holding an infant, and Hill was making threatening gestures towards her. When Ratliff approached them they fled. Ratliff pursued them and questioned the two. During the course of questioning, Ratliff determined that Hill was intoxicated and arrested him. This arrest was supported by probable cause.
"When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." Powell v. State, 548 So.2d 590, 600
(Ala.Cr.App. 1988), aff'd, Ex parte Powell, 548 So.2d 605
(Ala. 1989), quoting United States v. Saunders, 476 F.2d 5, 7
(5th Cir. 1973). Under Powell, we need not consider whether Ratliff had probable cause to arrest Hill for the specific crime of public intoxication. If Ratliff's observation of Hill's conduct was sufficient to supply her probable cause to arrest Hill for any chargeable offense, then the probable cause element is satisfied. In this case, Hill's conduct was at least sufficient to give probable cause to arrest for the crime of menacing, as defined by § 13A-6-23(a), Code of Ala. 1975 ("A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury."). Therefore, Ratliff had probable cause to arrest Hill.
 B.
Ratliff responded to the report of a domestic dispute under the erroneous belief that the location of the dispute was in Blount County. In fact, the incident resulting in Hill's arrest occurred approximately 500 feet from the Blount County-St. Clair County *Page 1027 
line, in St. Clair County. Ratliff observed Hill's conduct in St. Clair County and arrested Hill in St. Clair County. An officer's authority to make a warrantless arrest is set out in § 15-10-1, Code of Ala. 1975:
 "An arrest may be made, under a warrant or without a warrant, by any sheriff or other officer acting as sheriff or his deputy, or by any constable, acting within their respective counties, or by any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county."
Ratliff was not within the jurisdiction in which she was authorized to make an official arrest as a deputy sheriff. Whether a deputy can make a warrantless arrest outside the deputy's jurisdiction under these circumstances appears to be an issue of first impression in Alabama. This case presents a fact situation that has not yet been addressed by our court, and a search of the relevant caselaw fails to reveal authority on point on this issue.
The prevailing view regarding a situation like the one presented here is that if the circumstances were such that a private citizen would have had the authority to make a citizen's arrest under the same circumstances, then the extrajurisdictional warrantless arrest is legal. See generally Russell G. Donaldson, Annotation, Validity, In State CriminalTrial, of Arrest Without Warrant by Identified Peace OfficerOutside of Jurisdiction, When Not in Fresh Pursuit, 34 A.L.R.4th 328 (1984), and cases cited therein.
Florida subscribes to the prevailing view. In State v.Phoenix, 428 So.2d 262 (Fla.App. 4 Dist. 1982), Florida's District Court of Appeal discussed the rationale supporting that state's common law precedent granting police officers the power to make certain extrajurisdictional warrantless arrests:
 "In addition to any official power to arrest, police officers also have a common law right as citizens to make so-called citizen's arrests. State v. Shipman, [370 So.2d 1195 (Fla. 4th DCA 1979), cert. denied, 381 So.2d 769 (Fla. 1980)]. We do not mean to imply that police officers acting outside their jurisdictions are treated as private persons for purposes of the exclusionary rule. Rather, we mean that the Legislature, by vesting police officers with official powers, did not intend to divest the officers of their common law right as citizens to make arrests."
Id. at 265. We find this reasoning persuasive. We are further persuaded to favor this view, because the authority of a private citizen to make an arrest is much more limited in scope than the authority of a peace officer to do so. Compare §15-10-7, Code of Ala. 1975 ("Arrests by private persons"), with § 15-10-1, Code of Ala. 1975 ("Officers authorized to make arrests"), and § 15-10-2, Code of Ala. 1975 ("Arrest without warrant — When and for what allowed").
The minority view regarding extrajurisdictional warrantless arrests is that these arrests cannot be characterized as citizen's arrests when the arresting officer is in uniform or is acting under circumstances that would otherwise render the arrest to be made under the color of law. See, e.g.,Commonwealth v. Troutman, 223 Pa. Super. 509, 302 A.2d 430
(1973). The Phoenix court addressed the "color of law" doctrine as follows:
 "[The 'color of law'] doctrine does not prevent officers from making an otherwise valid citizen's arrest just because they happen to be in uniform or otherwise clothed with the indicia of their position when making the arrest. When officers outside their jurisdiction have sufficient grounds to make a valid citizen's arrest, the law should not require them to discard the indicia of their position before chasing and arresting a fleeing felon. Any suggestion that officers could not make a valid citizen's arrest merely because they happened to be in uniform or happened to be in a police car at the time they inadvertently witnessed a felony outside their jurisdiction would be ridiculous."
428 So.2d at 266. We, therefore, adopt the rule governing extrajurisdictional warrantless arrests by peace officers expressed in Phoenix. We now consider whether, under the facts of the instant case, Ratliff's arrest of Hill was proper under § 15-10-7. That section reads, in pertinent part: *Page 1028 
 "(a) A private person may arrest another for any public offense:
"(1) Committed in his presence;
" ..............................................
 "(c) A private person must, at the time of the arrest, inform the person to be arrested of the cause thereof, except when such person is in the actual commission of an offense, or arrested in pursuit."
In this case, Ratliff arrested Hill for public intoxication, a public offense, which was committed in Ratliff's presence, and which was ongoing at the time of the offense. Accordingly, Ratliff was within her authority as a private citizen to lawfully arrest Hill for public intoxication.[1]
 III.
Hill contends that the trial court erred by admitting an unsolicited statement that he made to police officers en route to the police station. Hill stated the following: "I am not drunk. I've only had 12 beers." Hill's only basis for this argument is that his arrest was illegal. Hill admits that the statement was voluntary and admissible but for the fact that his arrest was illegal. Hill further contends that the admission of this statement was prejudicial because the jury heard this statement nine times during the course of the trial and that he probably would not have been convicted had the statement not been admitted. As stated above, however, the arrest was legal; therefore, these issues have no merit.[2]
 IV.
Hill contends that the trial court erred by denying his motion for a judgment of acquittal because, he says, the state failed to present sufficient evidence to sustain his conviction. However, Hill's argument is based on the contention that the proof at trial varied from the allegations in the solicitor's complaint. This issue was not preserved for review. Hill did move for a judgment of acquittal at the end of the state's case but did not raise the issue of variance of proof at any time. "[T]his court has determined that issues as to a variance between the indictment and proof . . . are not preserved for review where they are not raised at trial."Turner v. State, 610 So.2d 1198, 1199 (Ala.Cr.App. 1992).
 V.
Finally, Hill contends that the trial court erred by denying his motion for a judgment of acquittal, or in the alternative motion for a new trial. The record indicates that a hearing on Hill's motion was held on June 2, 1994; however, a transcript of this hearing is not included in the record. "A reviewing court cannot predicate error on matters not shown by the record. . . . Indeed, a silent record supports a judgment."Harris v. State, 563 So.2d 9, 9 (Ala.Cr.App. 1984). The issues raised in Hill's motion are the issues he has presented on appeal and those issues have been considered above. Accordingly, the trial court's judgment is affirmed.
AFFIRMED.
TAYLOR, P.J., and McMILLAN, and COBB, JJ., concur.
LONG, J., recuses himself.
[1] Venue for prosecution of the offense would lie in either county. See § 15-2-7, Code of Ala. 1975 (entitled, "[Venue] — Offense committed on or near county boundary.").
[2] We note that under the private citizen doctrine adopted in part II of this opinion, extrajurisdictional arrests that are legal when characterized as a citizen's arrest do not allow the arresting officer any more leniency regarding the exclusionary rule than the officer would otherwise be allowed. Under the facts in this case, there is no indication that the police violated the exclusionary rule regarding Hill's statement.