# Supreme Court of Florida

_____

No. SC2024-1088
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**BRYAN ALLEN REPPLE,**
Respondent.

December 30, 2025

CANADY, J.

Bryan Repple, the Respondent here, was arrested for driving under the influence of alcohol in the City of Maitland by a Maitland police officer. The arresting officer transported Repple outside Maitland to a breath test facility in Orange County. At the facility, the officer read Repple the warning required by Florida's implied consent law, and Repple then submitted to a breath test, which showed an illegal breath-alcohol level. The issue presented by this case is whether the arresting municipal police officer's action under

the implied consent law at the breath test facility outside the bounds of his municipality was done without valid legal authority.

In *State v. Repple*, No. 6D23-1448, 2024 WL 2983786 (Fla. 6th DCA June 14, 2024), the Sixth District Court of Appeal affirmed the trial court's order suppressing the breath test results. The district court agreed with the trial court that the arresting Maitland officer lacked authority to request the test and that the test was therefore invalid because the test was administered outside the City of Maitland. Before *Repple* was decided by the Sixth District, the Fifth District Court of Appeal had addressed the same issue but reached the opposite conclusion in *State v. Torres*, 350 So. 3d 421 (Fla. 5th DCA 2022). In *Repple*, the Sixth District therefore certified direct conflict with *Torres*. The State sought review, and we accepted jurisdiction based on the certified conflict. *See* art. V, § 3(b)(4), Fla. Const.

We conclude that the action of the officer who arrested Repple in Maitland in subsequently requesting that Repple submit to the breath test was authorized by Florida's implied consent law even though the request was made outside Maitland. We therefore quash *Repple* and approve the result in *Torres*.

## I.

Before discussing the reasoning of the decision on review and the conflict case, we survey the basic elements in the relevant legal landscape. These elements are (1) the provision of Florida's Constitution regarding the extraterritorial exercise of powers by municipalities; (2) the "under color of office" doctrine, which condemns the unauthorized extraterritorial exercise of law enforcement powers; and (3) the provisions of Florida's implied consent law, which authorizes the administration of a breath-alcohol test incident to an arrest for driving under the influence.

### A.

### 1.

Article VIII, section 2(c) of the Florida Constitution provides that the "exercise of extra-territorial powers by municipalities shall be as provided by general or special law." As with any other extraterritorial exercise of municipal power, legislative authorization is required for the exercise of a municipality's law enforcement authority outside the territorial jurisdiction of the municipality. Most saliently, in the law enforcement context, express legislative authorization has been provided for extraterritorial fresh pursuit of

certain offenders or suspected offenders and for arrest incident to such fresh pursuit in section 901.25, Florida Statutes (2020), and for extraterritorial cooperation of law enforcement agencies under the Florida Mutual Aid Act, section 23.1225, Florida Statutes (2020).

2.

A law enforcement officer acts "under color of office" when the officer acts with purported authority in the absence of any legal basis for doing so. The "under color of office" doctrine is in accord with the limitation on the exercise of extraterritorial power embodied in article VIII, section 2(c). Both the constitutional provision and the doctrine recognize that officers must act only within the scope of the authority granted by law. It is axiomatic that law enforcement is constrained by law. And the geographical jurisdiction of a law enforcement agency is one constraint that may limit law enforcement activities.

In addressing the issue in the case on review, we need not explore all the contours of the "under color of office" doctrine in Florida's jurisprudence. For present purposes it is sufficient to note this Court's decision in *Phoenix v. State* (*Phoenix II*), 455 So. 2d

1024 (Fla. 1984), the leading Florida case on the doctrine. In that case, we discussed the doctrine in deciding the legal validity of arrests made in St. Lucie County by the Sheriff of Martin County and one of his deputies. The specific issue—presented by way of a certified question of great public importance—was whether the extraterritorial arrests could be justified as "citizen's arrests" in the circumstances presented. Those circumstances were that the arrests "resulted from an intentional surveillance conducted by police officers outside their jurisdiction, utilizing a police aircraft and officers on the ground and" that "the police officers used a marked police car and asserted their official position in stopping the arrestees." *Id.* at 1025 (quoting *State v. Phoenix* (*Phoenix I*), 428 So. 2d 262, 267 (Fla. 4th DCA 1982), *approved and remanded*, 455 So. 2d 1024). We concluded that in those circumstances, the citizen's arrests by the Sheriff and one of his deputies outside their jurisdiction were indeed valid. So we upheld the arrests in which the "Martin County sheriff and a deputy stopped [a] truck in St. Lucie County and, guns drawn and blue lights flashing, arrested the occupants." *Id.* at 1024.

We observed that "[c]ommon sense dictates that law enforcement officials, when they are outside their jurisdictions, should not be any less capable, by virtue of their position, of making a felony arrest than a private citizen." *Id.* at 1025.[1] We hastened to add that "because there are jurisdictional limitations on law enforcement officials' ability to make arrests, neither should they have any greater power of arrest outside their jurisdiction than private citizens." *Id.*[2] Agreeing with the district court's view that "the sheriff and his officers had not asserted their official position for any purpose other than to make the arrests," *id.* at 1026 (quoting *Phoenix I,* 428 So. 2d at 266), we also accepted the legal conclusion that the identification by the officers of "themselves as police officers when they made the arrest" was not a basis for invalidating the arrests based on the "under color of office" doctrine, *id.* We said that this circumstance was outside the scope of the

---

1. It has been recognized that citizen's arrest authority extends to non-felony offenses involving breach of the peace. *See, e.g., Edwards v. State*, 462 So. 2d 581, 582 (Fla. 4th DCA 1985).

2. But as we will see, this restriction of extraterritorial arrest authority is subject to the power of the Legislature to authorize extraterritorial arrests.

- 6 -

"under color of office" doctrine according to the view of most courts. That view—which we endorsed—holds that "the 'under color of office' doctrine applies only to prevent law enforcement officials from using the powers of their office to observe unlawful activity or gain access to evidence not available to a private citizen." *Id.* at 1025.

3.

Florida's implied consent law provides that any person "operating a motor vehicle within this state" is "deemed to have given his or her consent to submit to an approved . . . test," including a breath-alcohol test. § 316.1932(1)(a)1.a., Fla. Stat. (2020). Such testing under the implied consent law is to be performed only "if the person is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages." *Id.* The law further provides that the test "must be incidental to a lawful arrest and administered at the request of a law enforcement officer who has reasonable cause to believe such person was driving or was in actual physical control of the motor vehicle within this state while under the influence of

alcoholic beverages."  *Id.*  The arrestee "shall be told that his or her failure to submit to any lawful test" will result in certain legal consequences as specified in the statute.  *Id.*

## B.

Against the backdrop of these legal authorities, we examine the conflict case before turning to the decision on review.

## 1.

The decision in *Torres* dealt with a DUI arrest for an offense in Winter Park that was made by a Winter Park police officer who, after the arrest, transported the defendant to an Orange County test facility outside Winter Park.  At that facility, the arresting officer requested that the defendant submit to a breath test.  The defendant complied, and the resulting test showed an unlawful breath-alcohol level.  In determining whether the test results should be suppressed, the Fifth District described the "narrow issue" before it as whether the Winter Park police officer—even though outside the bounds of Winter Park—"nevertheless retained the power or authority to request that the defendant submit to a breath test as part of an ongoing DUI investigation."  *Torres*, 350 So. 3d at 424.  Discussing the "under color of office" doctrine and our

decision in *Phoenix II*, the Fifth District further stated that the question boiled down to whether the Winter Park officer "post-arrest, while outside of his territorial jurisdiction, used the color of his office to obtain [the breath test] evidence that a private citizen, under the implied consent statute, could not have obtained." *Id.*

The district court went on to identify an "exception" to the "under color of office" doctrine that "allows a municipal officer to continue to act or investigate outside of his or her geographic jurisdiction if the subject matter of the officer's investigation originates inside their city limits." *Id.* The court cited certain district court decisions as establishing this supposed exception. Ultimately, the Fifth District held "that the ongoing investigation exception to the color of office doctrine" applied to the conduct of the Winter Park police officer in requesting the breath test. *Id.*

The court explained that "the breath test evidence obtained by [the Winter Park police officer] outside of his municipality was directly related to the arrest and ongoing investigation for the DUI committed by the defendant within [the officer's] jurisdiction." *Id.* at 426. The Winter Park police officer "arrested the defendant because he had probable cause to believe that the defendant

- 9 -

committed the crime of DUI within" Winter Park. *Id.* According to the Fifth District, once that DUI arrest took place, "the color of office doctrine did not preclude [the arresting officer], as part of his ongoing investigation that originated inside the municipal city limits, from then taking the defendant to the Breath Test Center in Orlando and requesting that he submit to a breath test." *Id.*

2.

In *Repple*, the Sixth District set the stage by describing the argument that the defendant successfully presented to the trial court to obtain suppression of the breath test results. Relying on what we said in *Phoenix II*, the defendant contended that the Maitland police officer—in requesting the defendant's submission to the breath test outside Maitland—"unlawfully asserted his official authority because he acted outside of his territorial jurisdiction to obtain evidence not available to a private citizen using his or her own senses." *Repple*, 2024 WL 2983786, at \*2. The district court then described the State's reliance on the broad continuing investigation exception—which had been referred to in *Torres*—to justify the action outside the arresting officer's territorial jurisdiction. The court also pointed out that the State more

specifically argued "that because the DUI investigation began in Maitland, a Maitland municipal police officer had the power to use his official authority, outside the city limits of Maitland, to read Defendant the implied consent warning in accordance with section 316.1932 to obtain a breath test." *Id.*

Recognizing that the extraterritorial exercise of municipal police authority must be authorized by law, the Sixth District found that no such authorization had been shown to be applicable to the actions of the Maitland officer at the testing facility outside his territorial jurisdiction. The court noted that the officer's actions might have been authorized by a proper agreement under the Florida Mutual Aid Act but that no such agreement had been presented in evidence by the State. Based on an analysis of the relevant case authorities—which we need not rehearse here—the court concluded that there was no legal basis for any broad "continuing investigation exception." From its survey of the caselaw history, the district court concluded that "a stand-alone, continuing investigation exception may have inadvertently slid into Florida's jurisprudence." *Id.* at *7.

Furthermore, the district court said that "the premise of the State's argument [was] that courts can grant extraterritorial police power to municipalities." *Id.* at *5. Relying on article VIII, section 2(c)—which requires authorization by general or special law—the district court rejected any such judicial power to grant extraterritorial police authority.

The court recognized that under the implied consent law, the breath test was required to be incidental to a lawful arrest and administered at the request of a law enforcement officer with reasonable cause to believe that the arrestee was driving while under the influence of alcohol. According to the district court's analysis, when the Maitland police officer requested that the defendant submit to the breath test at the testing center outside Maitland, the officer was not acting as a legally authorized law enforcement officer but was instead acting "under color of office." That officer "was without the power to use his official authority outside the city limits of Maitland to obtain evidence not available to a private citizen." *Id.*

II.

The Sixth District correctly observed that the courts lack authority to grant municipal law enforcement officers extraterritorial powers. The Constitution makes clear that any such powers must be derived from "general or special law." *Id.* at *4 (citing art. VIII, § 2(c), Fla. Const.). And it is true that no legal provision specifically grants extraterritorial authority to a municipal police officer to request that an arrestee arrested in the officer's jurisdiction submit to a breath test under the implied consent law. But that is not the end of the matter.

It is a venerable principle in the law that "whenever a power is given by a statute, everything necessary to making it effectual or requisite to attaining the end is implied." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 192-93 (2012) (quoting 1 James Kent, Commentaries on American Law *464); *see also* 2B Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 55:4 (7th ed. 2012) (Implied powers). Not long after Florida became a state, this Court recognized the principle. *See Mitchell v. Maxwell*, 2 Fla. 594, 597 (1849) ("The law is well settled that, whenever a power is given by the statute,

- 13 -

everything necessary to the making it effectual is given by [implication]." (citing Kent, *supra*, among others)).  Since "[t]he implications . . . of a statute are as effective as are the express provisions," the absence of express authority does not necessarily defeat a claim to a specific power. *Cassady v. Sholtz, for Use & Benefit of Edwards*, 169 So. 487, 490 (Fla. 1936).

We have applied the principle in the context of governmental powers. *See Coca-Cola Co., Food Div., Polk Cnty. v. State, Dep't of Citrus*, 406 So. 2d 1079, 1081 (Fla. 1981) ("The powers of [the Department of Citrus] and similar agencies include both those expressly given and those given by clear and necessary implication from the provisions of the statute." (quoting *City Gas Co. v. Peoples Gas Sys., Inc.*, 182 So. 2d 429, 436 (Fla. 1965))); *Deltona Corp. v. Fla. Pub. Serv. Comm'n*, 220 So. 2d 905, 907 (Fla. 1969) (stating in applying statute granting powers to Public Service Commission that the "statutory grant of power or right carries with it by implication everything necessary to carry out the power or right and make it effectual and complete"); *see also Brock v. Bd. of Cnty. Comm'rs of Collier Cnty.*, 21 So. 3d 844, 847 (Fla. 2d DCA 2009) (citing *Deltona Corp.* in support of holding that "[a] public officer with the right and

responsibility to maintain custody of public funds necessarily has the authority both to investigate circumstances in which public funds have wrongfully been withheld from the officer's custody and to seek to obtain custody of the withheld funds").

We do recognize that this principle might be subject to abuse. It "must be applied with caution, lest the tail of what is implied wag the dog of what is expressly conferred." Scalia & Garner, *supra*, at 193. So an implied authority only arises by "fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the purposes for which" the express authority was granted. *State ex rel. R.R. Comm'rs v. Louisville & N.R. Co.*, 49 So. 39, 39 (Fla. 1909). Implied authority arises to carry out the legislative purpose—as reflected in the statutory text and context—not to alter what the Legislature has provided by statute.

Here, the extraterritorial action in requesting the test was an integral and necessary part of the law enforcement process initiated in the officer's jurisdiction under the implied consent law. This law provides that the breath test "must be incidental to" the DUI arrest. § 316.1932(1)(a)1.a., Fla. Stat. (2020). Use of the available testing

facility outside the jurisdiction of the arresting officer was necessary to make effectual the legislative design in the orderly implementation of the implied consent law. That law necessarily contemplates that the process initiated by the officer through the arrest of a person driving under the influence will ordinarily be completed through the request made by that same officer that the arrestee submit to a breath test. In the specific context of the implied consent law, the jurisdiction to complete the second step in the two-step process is necessarily implied.

Because the extraterritorial authority exercised by the officer arose by clear and necessary implication from the implied consent law, the officer was not acting "under color of office." And because our resolution of this case depends on the particular provisions of the implied consent law—with the two-step process we have described—we have no occasion to address the broader "continuing investigation exception" discussed in *Repple* and *Torres*.

### III.

The implied consent statute clearly contemplates that an officer making a DUI arrest will complete his responsibilities under the statute by requesting the arrestee to submit to a breath test.

The State here correctly argued that the officer had authority under that law to request the test outside his jurisdiction. Because the use of a testing facility outside the officer's jurisdiction cannot reasonably be understood to negate the officer's responsibility to complete his duties under the statute, we quash *Repple* and approve the result in *Torres*.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, and FRANCIS, JJ., concur.
GROSSHANS, J., concurs in result only with an opinion.
SASSO, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

GROSSHANS, J., concurring in result only.

I ultimately agree that we must quash the Sixth District's decision. However, I would do so based on different legal grounds. All members of this Court agree that municipal officers generally lack law enforcement authority beyond the geographic boundary of the municipality absent certain exceptions. Nevertheless, the Court is divided on how this rule applies here, in light of the facts of the case.

- 17 -

In my view, though, even if the officer's extraterritorial acts were not explicitly authorized as noted by the dissent, the exclusionary rule should not be the remedy for violations of that principle. Significantly, I find no indication that the rule against extraterritorial assertions of authority exists to protect the interests of those accused of a crime. Instead, as I understand it, the rule protects the autonomy of neighboring cities and counties. 63 C.J.S. Municipal Corporations § 620. The severe remedy of suppressing relevant and probative evidence at a criminal trial bears no logical relationship to the autonomy interests served by the mandate. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 348 (2006) (declining to apply exclusionary rule where statute did not "implicate[] . . . Fourth and Fifth Amendment interests"). And to the extent the facts here can be perceived to result in a statutory violation, it is significant that the applicable statutes do not contain any exclusionary rule to remedy their violation. *See Jenkins v. State*, 978 So. 2d 116, 130 (Fla. 2008) (refusing to apply any exclusionary rule where text of applicable statute did not fairly support such a remedy).

Accordingly, even if the officer improperly exerted authority beyond the bounds of his municipality, suppression was not warranted as the remedy. Thus, I find that the lower court committed error in suppressing Repple's breath-test results.[3]

SASSO, J., dissenting.

Because I disagree with the majority's reasoning, and the State has not demonstrated error, I respectfully dissent.

In my view, this issue boils down to whether section 316.1932, Florida Statutes (2020), impliedly grants extraterritorial power to municipal officers for the purpose of requesting a breath test. I frame the issue this way because, as the majority observes, if a municipality is to exercise powers outside its borders, the authority to do so must come from the Legislature by general or special law. Art. VIII, § 2(c), Fla. Const.; *see* § 166.021(3)(a), (4), Fla. Stat. (2020) (prohibiting municipalities from enacting laws for the exercise of extraterritorial power); *see also* Op. Att'y Gen. Fla. 82-01 (1982) (concluding that absent statutory authority a municipality had no

---

3. Considering the unique procedural circumstances of this case—including a transfer between district courts during the briefing process—I find that this issue was sufficiently preserved to reach it here.

extraterritorial power to operate and maintain or contract for operation and maintenance of private utility system). The majority says the Legislature has done so, applying the predicate-act canon to section 316.1932. While I agree that the canon is venerable, I do not agree that it applies here.

Implied powers arise when the express text leaves a genuine gap—implied powers must be truly necessary to carry out an explicitly granted power or right, not just convenient or generally related. *See generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 193 (2012) (explaining the application of the predicate-act canon); 2B Norman J. Singer & Shambie Singer, *Statutes and Statutory Construction* § 55:3 (7th ed. 2012) (Standards for determining what should be implied) ("[I]t is not sufficient that the act is advantageous or convenient to the major power conferred, or even effectual in the exercise of it. The power to be supplied by such process must be practically indispensable and essential in order to execute the power actually conferred." (citation omitted)). Typically, we see a valid implied power when its existence is required to effectuate an express grant of power. So, for example, the right to counsel may carry with it the

right to use one's own untainted funds to pay for an attorney. *See, e.g., Luis v. United States*, 578 U.S. 5, 35 (2016) (Thomas, J., concurring in the judgment).

There are two issues with applying the predicate-act canon, and thus reading implied powers, into the implied consent statute. First, section 316.1932 does not clearly fit within the rubric of an express grant of power to municipalities. Section 316.1932 is structured as a command to drivers in the state of Florida—accept the privilege to drive here and you have also consented to submit to certain tests under specific circumstances. § 316.1932(1)(a)1.a. The statute then goes on to prescribe the specific circumstances under which a breath test can be administered, including specifying quality-control standards and mandating that tests are performed substantially according to approved methods. *See, e.g.*, § 316.1932(1)(a)2. The statute requires a warning about the implications of refusing a breath test and prescribes consequences for refusal. § 316.1932(1)(a)1.a. So overall, in my view the statute, rather than granting officers powers or duties from which extraterritorial authority can be implied, should be read more as a limitation on government power—prescribing limited and specific

- 21 -

procedures through which a citizen can be both deprived of liberty and subjected to a search.

Second, and more importantly, even if I agree that the predicate-act canon is a natural fit for the statute, I cannot agree that it applies here. It is not necessary, in the way the predicate-act canon contemplates, for a municipal officer to leave his or her jurisdiction to conduct the breath test. It is not the grant of statutory power that demands the officer leave his jurisdiction, it is the municipality's failure to have an adequate testing apparatus. In fact, it is not even necessary to conduct a breath test to prosecute the crime with which Repple was charged. So, I disagree that application of the predicate-act canon justifies the majority's determination.

I recognize that my conclusion results in a seemingly impractical outcome. But in my view, the State, as petitioner, has the burden to demonstrate reversible error. *Bolick v. Sperry*, 82 So. 2d 374, 376 (Fla. 1955) ("Under our system of procedure the burden is always upon the appellant to make reversible error clearly appear."). It has not done so. So, while I remain open to the idea that something is missing in this case, whether it is an inter-local

agreement as suggested by the Sixth District, or some other source of power, the State has not satisfactorily identified either a source of power or an argument convincing me the Sixth DCA erred.

Finally, in my view the State did not properly preserve its argument that suppression is an incorrect remedy. For that reason, the trial court properly excluded the evidence and the Sixth District properly affirmed. I therefore respectfully dissent.

Application for Review of the Decision of the District Court of Appeal
 Certified Direct Conflict of Decisions &
 Constitutional Construction

 Sixth District - Case No. 6D2023-1448

 (Orange County)

James Uthmeier, Attorney General, Jeffrey Paul DeSousa, Acting Solicitor General, Nathan A. Forrester, Chief Deputy Solicitor General, Rajan K. Vasisht, Solicitor General Fellow, Rebecca Rock McGuigan, Chief Assistant Attorney General, and Richard A. Pallas, Jr., Assistant Attorney General, Tallahassee, Florida,

 for Petitioner

Stuart I. Hyman of Stuart I. Hyman, P.A., Orlando, Florida,

 for Respondent

- 23 -