UNITED STATES of America, Plaintiff,

v.

Alfred WILSON, Defendant.

No. 81–263–CR–EPS.

United States District Court,
S. D. Florida,
Miami Division.

Jan. 4, 1982.

John F. Peyton, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff.

Andrew Pavlick, Ed McHale, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO SUPPRESS

SPELLMAN, District Judge.

This matter was heard by the Court in an evidentiary hearing upon the Defendant's Motion to Suppress the physical evidence seized from aboard the M/V Miss Jill II. The Defendant asserts that the arresting officers had no jurisdiction or authority to make the stop and search of the American flag vessel or to arrest them. A two count indictment charges the Defendant with possession with intent to distribute a quantity of marijuana and with conspiracy to possess with intent to distribute a quantity of marijuana, in violation of 21 U.S.C. §§ 955a(a) and 955c. The Court, having considered the testimony and other evidence adduced at the hearing, having heard oral argument from counsel, having considered the respective memoranda of law and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law.

On February 25, 1981, Florida Marine Patrol (FMP) Officers Mike Minski and Andy Brown, along with Officer Ronald Dearmin of the National Oceanic and Atmospheric Administration, United States Department of Commerce, were patrolling off the west coast of Florida near Everglades City, Florida (Collier County) aboard the 50 foot Florida Marine Patrol vessel ORION within a fisheries conservation zone along a line of demarcation between designated stone crab bed areas and authorized shrimping areas as established by the Department of Commerce. The purpose of the officers' presence .in the area was to enforce federal regulations prohibiting shrimping vessels from casting their trolling nets within the stone crab bed area. The line of demarcation runs along the west coast of Southern Florida at distances from the shore varying up to 200 miles. 50 C.F.R. § 654.23(a).

At approximately 6:00 P.M., two contacts were picked up on the ORION's radar which appeared to be shrimping vessels

crossing into the stone crab bed area. The ORION weighed anchor and proceeded to intercept the vessels to determine if they were engaging in illegal shrimping activity. At the time the vessels were first spotted on radar they were approximately 30 miles from shore travelling in a northeasterly direction toward Everglades City, Florida. When the ORION, running without lights, approached the two vessels, Officer Minski turned the ORION's spotlight on one of the vessels, later determined to be the MISS JILL II, and observed burlap-wrapped bales, marked "Product of Colombia", stacked on her deck. At this point, the MISS JILL II veered away while the other vessel continued on its previous course. The ORION pursued the MISS JILL II and after a short chase effected a stop and boarding. The four occupants were immediately arrested. Three of these individuals were transferred to the ORION while the captain, Defendant Wilson, was left on board the MISS JILL II along with Officer Brown. Subsequently, the MISS JILL II was taken to Key West, Florida.

The Defendant argues that the marijuana seized aboard the MISS JILL II should be suppressed because at the time of the arrest the officers were outside of Florida's territorial waters and therefore had no authority or jurisdiction to stop and search the vessel or to make an arrest. The Defendant contends that the evidence should be suppressed as the result of an illegal search and as the "fruit" of an illegal arrest, however it is the conclusion of this Court that neither theory entitles the Defendant to the relief sought.

■ Addressing first the question of an illegal search, this Court concludes that the Defendant has failed to establish the requisite legitimate expectation of privacy in the area searched in order to raise a Fourth Amendment challenge to admission of the evidence. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Although the Defendant Wilson owned the vessel, the marijuana bales were not located in any area of the vessel which could be considered private as to any individual near the vessel, but rather, were stacked out in the open of the MISS JILL II. "There can be no legitimate expectation of privacy in those areas of a commercial vessel which are subject to the common access of those legitimately aboard the vessel." *United States v. DeWeese*, 632 F.2d 1267, 1271 (5th Cir. 1980).

■ Even if the Defendant were able to establish a legitimate expectation of privacy, it is clear that the search of the vessel could in no way be characterized as illegal. The Court finds as a fact that no "search" was made by the officers at the time of arrest. The marijuana bales were in the open on the vessel's deck, in plain view of the officers aboard the ORION, under the illumination of her spotlight. No search of the vessel was required to discover the marijuana. It was obvious to even a casual observer. To a large extent, this disposes of the Defendant's argument that neither officer was authorized to exercise the more expansive statutory search powers provided by 14 U.S.C. § 89(a) or 19 U.S.C. § 1581(a) to the Coast Guard and Customs Service, respectively. Because the marijuana was in plain view, the officers had no need to, nor did they in fact, exercise these special statutory powers to search vessels on the high seas. The plain view sighting of the marijuana bales and the MISS JILL II's attempt at flight were more than sufficient probable cause to stop and seize the vessel.

As previously noted, the Defendant also argues that the evidence should be suppressed as the "fruit" of an illegal arrest because the officers were acting outside their jurisdiction. It is the conclusion of this Court that the State does possess general law enforcement authority, under these circumstances, within the boundaries defined by the Florida Constitution, i.e. within 9 miles of shore. Inasmuch as the arrest in this case took place more than 9

miles offshore, the officers were acting outside of their statutory jurisdiction.[1]

■■■■ Generally, where a law enforcement officer makes an arrest outside of his geographic area of jurisdiction he is deemed to be acting as a private citizen and a Federal Court looks to the law of the state in which the arrest occurred to determine if the action can be upheld as a citizen's arrest. *United States v. Ible*, 630 F.2d 389 (5th Cir. 1980). Florida follows the common law rule recognizing the right of a police officer to make a citizen's arrest (1) where a felony is committed in his presence or (2) when a felony has actually been committed and the police officer as a citizen reasonably believes, in good faith, that the person to be arrested has committed the felony. *Ible* at 393. Here, the arrest took place outside the law enforcement territory of the State of Florida. Thus, Florida law is not controlling. However, where there is no specific federal law to govern this situation, a federal court may resort to and apply the common law. *United States v. Crain*, 589 F.2d 996 (9th Cir. 1979). Applying the common law rule to the facts of this case it is clear that the arrest was valid and lawful as a citizen's arrest. Upon approaching the MISS JILL II and turning their spotlight on the vessel the officers immediately saw the bales of marijuana on deck and the home port designation of Marathon, Florida, establishing the commission of a felony in the officers' presence. The officers did not exercise any special police authority in observing the marijuana bales which were in plain view on the vessel. Thus, the officers were not acting "under color of office" or "in some other manner openly asserting [their] official position, in order to observe the unlawful activity involved or the contraband seized." *Ible, supra*, 630 F.2d at 393. The arrest itself was, of course, effected by the officers' holding themselves out as police officers. However, that does not defeat their lawful, innocent action as

citizens in discovering that a felony was being committed in their presence. Cf. *State v. Williams*, 366 So.2d 135, 136 (Fla.2nd D.C.A. 1979).

Thus, the actions of the FMP officers were wholly justified as a lawful citizen's arrest. However, even if the officers had acted under color of office and thus could not lawfully make a citizen's arrest, in the Court's view the actions of the officers would not rise to the level of a violation of the Defendant's Fourth Amendment right to be free from unreasonable searches and seizures. Moreover, the Court finds that the use of the exclusionary rule under the facts of this case would not materially advance or preserve the protection afforded by the Fourth Amendment.

The Fifth Circuit, sitting *en banc*, has previously held that "evidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken, belief that they are authorized." *United States v. Williams*, 622 F.2d 830, 840 (5th Cir., *en banc*, 1980).

In the present case, the actions of the FMP officers were taken in complete good faith. No reasonable person could fault the officers for exercising what they, and subsequently this Court, found to be their lawful authority to arrest the Defendant for a felony violation of the narcotics laws. Thus, the good faith exception to the exclusionary rule would apply in the present case, even if the actions of the officers were not authorized as a citizen's arrest.

For all the foregoing reasons, the Defendant's Motion to Suppress is hereby DENIED.

---

1. At the trial of this cause, it developed that the officers initially encountered the MISS JILL II within the 9 mile law enforcement area off the shore of Florida. This emphasizes the good faith of the officers and indicates that they were within their jurisdiction in investigating the MISS JILL II.