UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert HERNANDEZ, John Robert Pullman, Keith Stuart Tillotson, Thomas Edward Campbell, Jesus Nieto, Aristedes Caballero, Defendants-Appellants.

No. 82–5872
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Sept. 19, 1983.

Diane R. Tolbert, Court appointed, Key West, Fla., for Hernandez.

Vincent J. Flynn, Flynn, Rubio & Tarkoff, Miami, Fla., for Pullman.

Benedict P. Kuehne, Jon A. Sale, Bierman, Sonnett, Beiley, Shohat & Sale, P.A., Miami, Fla., Robert R. Hagaman, Naples, Fla., for Tillotson and Campbell.

Geoffrey C. Fleck, Weiner, Robbins, Tunkey & Ross, P.A., Miami, Fla., for Nieto.

Joel N. Rosenthal, Miami, Fla., for Caballero.

Stanley Marcus, U.S. Atty., Richard H. Kamp, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM:

Appellants were charged in a two count indictment with conspiracy to possess marijuana in violation of 21 U.S.C. § 955c (Supp. V 1981), and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 955a(a) (Supp. V 1981) and 18 U.S.C. § 2 (1976). All appellants were convicted on count II; Nieto, Hernandez and Caballero were convicted on count I. They now challenge the sufficiency of the evidence and several rulings of the district court. None of their challenges has merit, and we accordingly affirm.

On the night of April 21, 1982, the Florida Marine Patrol vessel ORION was on a routine patrol of stone crab sanctuaries in the Gulf of Mexico off the southwest Florida coast. The purpose of the patrol was to enforce federal regulations prohibiting shrimping vessels from trolling their nets within the stone crab bed area. *See* 50

C.F.R. § 654.23(a) (1982). At a point about twenty-five miles off shore, the ORION's radar spotted what appeared to be a vessel five and a half miles to the northeast in the closed shrimping area. The vessel was not visible to the ORION through a night scope or field glasses; thus the ORION concluded that it was running without lights in violation of maritime regulations. The crew of the ORION therefore decided to investigate whether the vessel was engaged in illegal shrimping.

As the ORION, now operating without running lights, closed to within 150 yards of the vessel, Officer Gagliardi smelled a very strong odor of marijuana and so informed his captain, Minsky. The ORION turned on its spot light and saw a shrimp trawler, MISS LAURIE, with numerous bales of marijuana stacked in plain view on its rear deck, being towed by a smaller vessel, a crab boat. Minsky turned on the ORION's blue law enforcement light and over the PA system announced the Florida Marine Patrol's presence and that those aboard the two vessels were under arrest. Moments later, Officer Gagliardi heard a gun shot and saw the crab boat take off at a high rate of speed. The ORION turned on its siren and gave chase, firing seven signal shots from a shotgun in an attempt to halt the crab boat. The ORION eventually caught the boat, named the PIECE OF WORK, and put its crew members, appellants Pullman, Campbell, and Tillotson, under arrest. While Officer Gagliardi was aboard the PIECE OF WORK, Campbell volunteered that he couldn't understand how the ORION caught up with them.

There was no marijuana aboard the PIECE OF WORK, but Gagliardi found pieces of the tow line apparently used to tow the MISS LAURIE, which appeared to have been cut. The ORION returned to the MISS LAURIE, placed appellants Nieto, Hernandez, and Caballero under arrest, and took them to Key West. The Coast Guard took custody of the two seized vessels.

In addition to establishing the above facts, the Government introduced two charts found aboard the MISS LAURIE, indicating that the vessel probably originated its voyage to the United States in the vicinity of Honduras, about 150 hours running time from the point of arrest; and a United States certificate of registration and a bill of sale showing that appellant Hernandez owned the vessel. Both vessels were registered at home ports in Florida. The Government also produced testimony that the MISS LAURIE had not been engaged in shrimping; among other things, there was no ice aboard.

On the basis of this evidence, the jury was entitled to infer that the defendants aboard the MISS LAURIE, Hernandez, Nieto, and Caballero, had not been on a shrimping voyage, but instead had been on a drug running voyage of at least six days duration as joint venturers and thus were guilty of both charges of the indictment. As for Pullman, Campbell, and Tillotson, who were aboard the crab boat, the evidence was more than adequate to authorize the jury to conclude that they were aiding and abetting the others in the possession of the marijuana aboard the MISS LAURIE.

■ Appellants claim that the evidence and contraband seized from the MISS LAURIE and PIECE OF WORK were seized in violation of their fourth and fourteenth amendments right. No evidence taken from the PIECE OF WORK was introduced at trial. As for the MISS LAURIE, appellants had no expectation of privacy in the marijuana they carried aboard its deck in plain view. The fact that appellants were traveling in darkness when they were caught gives them no comfort under the circumstances presented here.

■ Appellants also question the authority of the Florida Marine Patrol officers to arrest them. Florida recognizes the common law rule that a policeman may make an arrest as a private citizen when a felony is committed in his presence. *United States v. Ible,* 630 F.2d 389, 393 (5th Cir.1980). Of course, Florida law can only be applied to acts that occur within the boundaries of the State of Florida, which with regard to the west coast of Florida, extends three marine leagues or approximately nine geographical

miles seaward of the Gulf of Mexico coastline. *See* Fla. Const. Art. II, § 1(a). Since the appellants' arrest occurred approximately twenty-five miles off the coast, we cannot apply Florida law; we must apply federal law. "Where, as here, however, there is no specific federal law to govern this situation, a federal court may resort to and apply the common law." *United States v. Collins,* 523 F.Supp. 239, 243 (S.D.Fla. 1981), *aff'd,* 667 F.2d 97 (5th Cir.1982) (citations omitted); *accord United States v. Wilson,* 528 F.Supp. 1129, 1132 (S.D.Fla.1982). Thus, we apply the common law rule on citizen's arrests in this case, although as a matter of federal common law, not Florida common law.

 Applying the common law rule to the facts of this case, it is clear that the arrest was valid and lawful as a citizen's arrest. The Florida Marine Patrol was properly patrolling a federally protected crab sanctuary. It noticed that a vessel or vessels was operating within the sanctuary and went to investigate whether federal fishing regulations were being violated. As the Florida Marine Patrol approached the MISS LAURIE and the PIECE OF WORK, the officers smelled marijuana. They turned a spotlight on the vessels and immediately saw marijuana bales in plain view on the MISS LAURIE. This established the commission of a felony in the officer's presence that allowed them to make a citizen's arrest.

At this point in time, when the Florida Marine Patrol officers made the decision to arrest the appellants, no special police authority had been exercised. Thus, the officers had not acted "under color of office" or "in some other manner openly asserting their official position, *in order to observe the unlawful activity involved on the contraband seized." Ible,* 630 F.2d at 393 (quoting *Florida v. Shipman,* 370 So.2d 1195, 1196–97 (Fla.Dist.Ct.App.1979), *cert. denied,* 381 So.2d 269 (Fla.1980) (emphasis added); *accord Wilson,* 528 F.Supp. at 1132. The arrest itself, of course, was accomplished by the officers holding themselves out as police officers. These actions, however, do not defeat their prior lawful, innocent action as citizens in discovering that a felony was being committed in their presence. *Wilson,* 528 F.Supp. at 1132. Thus, the actions of the Florida Marine Patrol officers were wholly justified as a lawful citizen's arrest.

Finally, we reject without discussion appellant Pullman's claim of error in the court's admission in evidence, as to him only, of his prior conviction on a cocaine charge, and Campbell's and Tillotson's claim that the court should have severed them because of the "spill over" prejudicial effect of that evidence on their cases. We also summarily reject the claim of these three appellants that the court erred in instructing the jury on the evidence of flight.

There is no error, much less reversible error, in this record and, accordingly, we

AFFIRM.