OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

February 21, 2002

The Honorable Jeri Yenne
Brazoria County Criminal District Attorney
Brazoria County Courthouse
111 East Locust Street, Suite 408A
Angleton, Texas 77515

Opinion No. JC-0466

Re: Whether peace officers serving as off-duty security guards on casino boats have authority to make arrests and related questions
(RQ-0422-JC)

Dear Ms. Yenne:

You ask several questions about the authority of Texas peace officers serving as off-duty security guards on casino boats that sail from a port in your county to waters beyond the territorial jurisdiction of the State of Texas.[1] You ask, among other things, about these peace officers' authority to make arrests both within the state's territorial waters and on the seas outside the territorial boundaries of the state. Your questions raise complex issues of first impression. In answering them, we focus primarily upon state rather than federal or international law. In addition, your questions are quite general and we address them in only general terms. We conclude that Texas peace officers have the authority to make arrests under state law within the state's territorial waters, although the extent of that authority depends upon the type of peace officer and whether he or she is within his or her jurisdiction. Once a casino boat sails beyond the state's territorial waters, however, an officer does not have authority to keep the peace and arrest passengers under Texas law. Federal law, the law of the ship's flag state, and international law may provide authority to keep order on the ship outside the state's territorial waters, but are beyond the scope of this opinion.

## I. LEGAL FRAMEWORK

Before addressing your specific questions, we briefly outline the relevant legal framework. You ask about casino boats that convey passengers from a port in your county into the Gulf of Mexico for the purpose of gambling, returning to the same port after a number of hours. State and federal law generally prohibit gambling and other gambling related activities, see, e.g., 18 U.S.C. §§ 1081-84 (1994) (federal gambling offenses), 15 U.S.C. §§ 1171-78 (1994 & Supp. V 1999) (federal restrictions on transporting gambling devices); TEX. PEN. CODE ANN. ch. 47 (Vernon 1994

---

[1]Letter from Honorable Jeri Yenne, Brazoria County Criminal District Attorney, to Honorable John Cornyn, Texas Attorney General (Aug. 23, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

& Supp. 2002) (state gambling offenses), but make certain exceptions for the activities of boats that make trips out of United States ports. Under federal law, these boats may not conduct gambling operations except beyond the territorial waters of the United States. *See* 18 U.S.C. §§ 1081, 1082 (1994) (Federal Gambling Ship Act); 26 U.S.C. § 4472 (1994) (definition of "covered voyage"); 26 C.F.R. § 43.4472-1(e) (2001) (definition of "territorial waters"). Similarly, state law prohibits gambling and other gambling-related activities, *see* TEX. PEN. CODE ANN. ch. 47 (Vernon 1994 & Supp. 2002) (gambling offenses), but provides a defense for certain gambling-related offenses for vessels equipped with gambling devices provided that the devices are not operated within the state's territorial waters, *see id.* § 47.09(b) (Vernon Supp. 2002); *see also id.* § 47.10 (Vernon 1994) (limitation on defense); TEX. OCC. CODE ANN. ch. 2003 (Vernon 2002) (state inspection and municipal inspection and regulation of gambling vessels).

The State of Texas' territorial waters extend three marine leagues (nine nautical or geographical miles)[2] into the Gulf of Mexico. The territorial waters of most states extend only three geographical miles from the coastline. *See* 43 U.S.C. § 1312 (1994) ("The seaward boundary of each original coastal State is approved and confirmed as a line three geographical miles distant from its coast line . . . . Any State admitted subsequent to the formation of the Union which has not already done so may extend its seaward boundaries to a line three geographical miles distant from its coast line . . . ."). The United States Supreme Court has held, however, that the State of Texas is entitled to extend its seaward boundary three marine leagues into the Gulf of Mexico. *See United States v. La.*, 363 U.S. 1, 84 (1960) (under Federal Submerged Lands Act, 43 U.S.C. §§ 1301-15, State of Texas entitled to extend its seaward boundary three marine leagues from its coastline into the Gulf of Mexico).

Consistent with this case law, section 11.012(a) of the Texas Natural Resources Code provides that "[t]he gulfward boundary of the State of Texas is the boundary determined in and pursuant to the decision of the United States Supreme Court in *Texas v. Louisiana*, 426 U.S. 465 (1976)," a later case recognizing Texas' seaward boundary at the three marine league line, *see* 426 U.S. at 466 n.1, and establishing the lateral seaward boundary between Texas and Louisiana and between Texas and the United States. In 1998, the Supreme Court entered a supplemental decree in the Texas boundary case of *United States v. Louisiana*. That decree changed the federal-state boundary from an ambulatory line of three marine leagues from Texas' coastline to an immobile boundary of three marine leagues as specified by fixed coordinates. *See United States v. La. (Texas Boundary Case)*, 525 U.S. 1 (1998).

Similarly, section 11.013 of the Natural Resources Code expressly provides that "[t]he gulfward boundary of each county located on the coastline of the Gulf of Mexico is the Three Marine

---

[2]One English, statute, or land mile equals approximately .87 geographical, marine, or nautical mile. A marine league is equal to the distance of three nautical miles. *See United States v. Cal.*, 381 U.S. 139, 148 n.8, 179 n.4 (1965).

League line as determined by the United States Supreme Court." TEX. NAT. RES. CODE ANN. § 11.013(a) (Vernon 2001). The Land Commissioner is charged with platting the sea boundaries between the coastal counties. *See id.* § 31.063.

For purposes of criminal jurisdiction, Congress has extended the United States' seaward boundary twelve nautical miles from the coast. *See* Pub. L. No. 104-132, § 901(a) (1996), *reprinted in* 18 U.S.C. § 7, Notes (Supp. V 1999). The Federal Gambling Ship Act, however, excepts gambling on vessels that is conducted more than three nautical miles from the United States coastline. *See United States v. One Big Six Wheel,* 166 F.3d 498 (2d Cir. 1999) (holding that 12-mile territorial limit established by the Federal Antiterrorism and Effective Death Penalty Act of 1996 does not affect Gambling Ship Act, 18 U.S.C. § 1082, and concluding that for purposes of Gambling Ship Act "'territorial waters' extend three nautical miles from the U.S. coastline"). On the other hand, the State of Texas' prohibition against gambling extends three marine leagues, or nine nautical miles, into the Gulf of Mexico. *See* TEX. PEN. CODE ANN. § 47.09(b) (Vernon Supp. 2002) (defense against gambling offenses for gambling boats applies only if gambling devices are disabled and not used for gambling while the vessel is "in the territorial waters of this state"). As you inform us that the casino boats that dock in your county conduct gambling only in international waters, beyond the territorial waters of both the United States and the State of Texas, *see* Request Letter, *supra* note 1, at 1, we need not address the significance, if any, in the differences between state and federal law.

Peace officers from your county and others in Texas are employed on these casino boats as off-duty security guards. Under the Code of Criminal Procedure and the Penal Code, the term "peace officer" is specifically defined to include a long list of law enforcement officers. *See* TEX. CODE CRIM. PROC. ANN. art. 2.12 (Vernon Supp. 2002); TEX. PEN. CODE ANN. § 1.07(36) (Vernon 1994) (defining "peace officer" in reference to, among other things, TEX. CODE CRIM. PROC. ANN. art. 2.12). We assume that you ask about peace officers who fall within these statutory definitions. The Private Security Act, TEX. OCC. CODE ANN. ch. 1702 (Vernon 2002), generally requires that private security officers have a commission from the Texas Commission on Private Security, *see id.* §§ 1702.161-.171, but excepts certain peace officers who work off-duty from this requirement, *see id.* § 1702.322(1). For purposes of this opinion, we will assume that the peace officers at issue are working as security guards under this exception to the Private Security Act.

## II. ANALYSIS

You ask a variety of questions about Texas peace officers' authority to maintain order and make arrests on the casino boats both within and beyond the territorial waters of the state. We take your ten questions somewhat out of order and first respond to your questions pertaining to peace officers' authority within the territorial waters of the State of Texas. In order to address these questions, we examine, first, the geographical scope of Texas and its coastal counties for purposes of criminal jurisdiction and, second, the nature of peace officers' authority within state territorial waters.

### A. Peace Officers' Authority within the Territorial Waters of the State of Texas

### 1. Criminal Jurisdiction of the State of Texas in the Gulf of Mexico

The criminal jurisdiction of the State of Texas and its coastal counties extends to the three marine league line. Although the United States Constitution grants federal courts exclusive admiralty and maritime jurisdiction, states may exercise concurrent criminal jurisdiction within their territorial waters provided that there is no conflict with federal law or the rights of foreign nations. *See Skiriotes v. Florida*, 313 U.S. 69, 75 (1941) ("Florida has an interest in the proper maintenance of the sponge fishery and . . . the [sponge fishery] statute so far as applied to conduct within the territorial waters of Florida, in the absence of conflicting federal legislation, is within the police power of the State."); *State v. Stepansky*, 761 So. 2d 1027, 1033 (Fla. 2000) ("federal constitution's grant of power to federal courts to hear 'all Cases of admiralty and maritime Jurisdiction,' U.S. CONST., art. III, § 2, cl. 1, . . . does not preclude a state's exercise of concurrent jurisdiction with the federal government within the state's territorial waters") (citing *Askew v. Am. Waterways Operators, Inc.*, 411 U.S. 325, 341 (1973); *Hoopengarner v. United States*, 270 F.2d 465, 471 (6th Cir. 1959)). Within its territorial waters, the State of Texas has asserted

> full sovereignty over the water, the beds and shores, and the arms of the Gulf of Mexico within its boundaries . . . , subject only to the right of the United States to regulate foreign and interstate commerce under Article I, Section 8 of the United States Constitution, and the power of the United States over admiralty and maritime jurisdiction under Article III, Section 2 of the United States Constitution.

TEX. NAT. RES. CODE ANN. § 11.012(b) (Vernon 2001). Additionally, under the Penal Code, the State of Texas has extended its criminal jurisdiction to "the land and water and air space above the land and water over which the state has power to define offenses." TEX. PEN. CODE ANN. § 1.04(d) (Vernon 1994). These provisions and section 11.013 of the Natural Resources Code, which expressly provides that "[t]he gulfward boundary of each county located on the coastline of the Gulf of Mexico is the Three Marine League line," TEX. NAT. RES. CODE ANN. § 11.013(a) (Vernon 2001), extend the criminal jurisdiction of the State of Texas and its coastal counties to the three marine league line.

### 2. Peace Officers' Authority on Casino Boats on the State's Territorial Waters

As you are interested in peace officers' authority to make arrests on casino boats upon seeing crimes in progress, we focus on their authority to make arrests without a warrant. The authority of a peace officer in this state depends in part upon whether the officer is physically located within his or her jurisdiction, such as, for example, the county or city that he or she serves. The Code of Criminal Procedure charges peace officers with "preserv[ing] the peace within the officer's

jurisdiction." TEX. CODE CRIM. PROC. ANN. art. 2.13(a) (Vernon Supp. 2002). Within an officer's jurisdiction, the officer "shall use all lawful means" to, among other things, "in every case authorized by the provisions of this Code, interfere without warrant to prevent or suppress crime," and "arrest offenders without warrant in every case where the officer is authorized by law, in order that they may be taken before the proper magistrate or court and be tried," *id.* art. 2.13(b)(1), (4).

Chapter 14 of the Code of Criminal Procedure governs warrantless arrests. Under article 14.01(b), a peace officer may "arrest an offender without a warrant for any offense committed in his presence or within his view," *see id.* art. 14.01(b) (Vernon 1977), but this authority is limited to the officer's geographic jurisdiction, *see Angel v. State*, 740 S.W.2d 727, 732 (Tex. Crim. App. 1987) (under section 14.01(b) a peace officer can make a warrantless arrest only within his geographic or territorial jurisdiction).

A peace officer also has authority to make certain arrests outside of his or her jurisdiction. Under article 14.01(a) of the Code of Criminal Procedure, a peace officer, like any other citizen, may, without a warrant, "arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace." TEX. CODE CRIM. PROC. ANN. art. 14.01(a) (Vernon 1977). This authority under article 14.01(a) to make a warrantless arrest for a felony or an offense against the public peace committed in the officer's presence extends statewide and is not limited to acts that take place within the officer's jurisdiction. *See Romo v. State*, 577 S.W.2d 251, 253 (Tex. Crim. App. [Panel Op.] 1979).

Significantly, another more recent addition to chapter 14, article 14.03(d), gives peace officers specific authority to make warrantless arrests for certain offenses anywhere in the state. *See Yeager v. State*, 23 S.W.3d 566, 571-72 (Tex. App.–Waco 2000, pet. filed) (holding that subsections (d) and (g) of article 14.03 extend peace officers' geographic authority). It specifically authorizes a peace officer "who is outside his jurisdiction" to arrest without a warrant a person who commits an offense within the officer's presence or view "if the offense is a felony, a violation of Title 9, Chapter 42, Penal Code [disorderly conduct], a breach of the peace, or an offense under Section 49.02, Penal Code [public intoxication]." TEX. CODE CRIM. PROC. ANN. art. 14.03(d) (Vernon Supp. 2002).

In addition, article 14.03(g) gives certain officers greater authority outside their jurisdictions —the authority to arrest without a warrant a person who commits *any offense* within the officer's presence or view, with the exception of certain traffic offenses that are not relevant here. *See id.* art. 14.03(g) ("A peace officer listed in Subdivision (1), (2), (3), (4), or (5), Article 2.12, who is licensed under Chapter 415, Government Code [now chapter 1701 of the Occupations Code], and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer who is outside the officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the officer is listed in Subdivision (4), Article 2.12.") (footnote omitted). The officers granted this additional authority

by article 14.03(g) include sheriffs and constables (and their deputies and reserve deputies) and municipal marshals and police officers (and reserve municipal police officers) who hold a permanent peace officer license issued under chapter 1701 of the Occupations Code; rangers and officers commissioned by the Department of Public Safety; and investigators of the district attorneys', criminal district attorneys', and county attorneys' offices. *See id.* art. 2.12(1)-(5) (Vernon Supp. 2002).

These provisions have been construed to authorize officers to make arrests outside their jurisdictions but not to make investigative detentions. *See Yeager*, 23 S.W.3d at 572 ("We do not believe that article 14.03 itself grants a peace officer the right to conduct an investigative detention outside of her jurisdiction."). An officer who is outside his or her jurisdiction must have probable cause to make an arrest under article 14.03. *See id.* at 568 ("an officer must have probable cause to arrest before he can detain a citizen under article 14.03 when outside of his geographic jurisdiction").

In addition, Texas courts recognize the common law "hot pursuit" doctrine. Under this principle, Texas peace officers who are drawn outside of their jurisdiction into another Texas jurisdiction while in "hot pursuit" of a fleeing suspect do not lose their authority to detain and arrest the suspect. *See id.* at 575 (citing *Preston v. State*, 700 S.W.2d 227, 229 (Tex. Crim. App. 1985); *Duenez v. State*, 735 S.W.2d 563, 565 (Tex. App.–Houston [1st Dist.] 1987, pet. ref'd)). The test for hot pursuit "focuses on the immediate and continuous nature of the pursuit, and it applies to situations involving a continuous pursuit where there is no break in the police effort to apprehend or in the subject's effort to escape." *Id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 14.051 (Vernon Supp. 2002) ("A peace officer commissioned and authorized by another state to make arrests for felonies who is in fresh pursuit of a person for the purpose of arresting that person for a felony may continue the pursuit into this state and arrest the person."). The authority of a Texas peace officer to make an arrest after pursuing a felon from the state into another jurisdiction will depend upon the law of that jurisdiction. *See, e.g., Jimenez v. State*, 750 S.W.2d 798, 803 (Tex. App.–El Paso 1988, pet. ref'd) (citing *Minor v. State*, 219 S.W.2d 467, 469 (Tex. Crim. App. 1949)).

With these provisions in mind, we address your questions about the authority of peace officers working as off-duty security guards on casino boats within the territorial waters of the state. Because the criminal jurisdiction of the State of Texas and its coastal counties extends to the three marine league line, a Texas peace officer has the same authority on the state's territorial waters that she or he has on land within the state, provided that there is no conflict with federal law or the rights of foreign nations. The extent of that authority at any particular location on the state's territorial waters will depend upon the type of peace officer and whether he or she is within his or her jurisdiction.

First, you ask when a peace officer who is outside his jurisdiction may arrest without a warrant someone who commits within his presence an offense that is not a felony, breach of the peace, or an offense under section 49.02 of the Penal Code. *See* Request Letter, *supra* note 1, at 2

(question 7). Again, under article 14.03(g) of the Code of Criminal Procedure, certain officers (including any sheriff, constable or municipal marshal or police officer) outside of their jurisdiction may arrest without a warrant a person who commits any (non-traffic related) offense within the officer's presence or view. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(g) (Vernon Supp. 2002). Other officers are limited to making warrantless arrests outside their jurisdictions only as specifically authorized by other provisions in chapter 14, such as article 14.01(a) and article 14.03(d), which authorize warrantless arrests only for specific offenses, or as authorized by the common-law doctrine of hot pursuit.

In a related question, you ask, "What law enforcement entity has jurisdiction outside the boundaries of the county but within the boundaries of the state, i.e. the territorial waters of Texas?" Request Letter, *supra* note 1, at 3 (question 8). You appear to be concerned that there may be some area of the state's territorial waters outside the territory of any county. *See id.* at 3, 4. Because the coastal counties' boundaries extend to the three marine league line that is also the state's seaward boundary in the Gulf of Mexico, *see* TEX. NAT. RES. CODE ANN. §§ 11.012(a), .013(a) (Vernon 2001), any point within the state's territorial waters will also be within a coastal county. As on land, county, state, and federal law enforcement authorities exercise concurrent criminal jurisdiction over the state's territorial waters. *See, e.g.,* 14 U.S.C. § 89(a) (1994) ("The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States."); *United States v. Collins,* 523 F. Supp. 239 (S.D. Fla. 1981), *aff'd,* 667 F.2d 97 (11th Cir. 1982) (holding that U. S. Coast Guard and Florida Marine Patrol exercise concurrent jurisdiction within the State of Florida's territorial waters).

You also ask which law enforcement agency would have jurisdiction over an arrest made under section 14.03. *See* Request Letter, *supra* note 1, at 2 (question 7). Again, section 14.03(g) authorizes certain peace officers to make arrests anywhere in the state. It specifically requires the arresting officer to "as soon as practicable after making the arrest notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06." TEX. CODE CRIM. PROC. ANN. art. 14.03(g) (Vernon Supp. 2002). Section 14.03(d) contains a similar requirement. *See id.* art. 14.03(d); *see also id.* art. 14.06(a) (providing that an officer making an arrest without a warrant take the person "before some magistrate of the county where the arrest was made" or "if necessary" to more promptly inform the person of his or her rights "before a magistrate of a county bordering the county in which the arrest was made"). Thus, an officer outside his or her territorial jurisdiction and within the state's territorial waters who arrests a person under the authority of 14.03(g) would transfer custody of the person to the "law enforcement agency having jurisdiction where the arrest was made." *Id.* art. 14.03(g). Again, the Land Commissioner is charged with platting sea boundaries between the coastal counties under section 31.063 of the Natural Resources Code.

You also ask if the answers to any of these questions would change "if the peace officer is engaged in off-duty status for the casino boat and not under the supervisory control of any law enforcement agency." Request Letter, *supra* note 1, at 3 (question 10). They would not. Numerous court decisions hold that a Texas peace officer remains a peace officer twenty-four hours a day and possesses the full powers of a peace officer in the presence of criminal activity. *See, e.g., Wood v. State*, 486 S.W.2d 771 (Tex. Crim. App. 1972) ("It is the law in this state that a police officer's 'off-duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity."); *Simms v. State*, 319 S.W.2d 717 (Tex. Crim. App. 1958); *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 377 (Tex. App.–Dallas 1994, no writ) ("An off-duty police officer who observes a crime immediately becomes an on-duty police officer.") (citing *Hafdahl v. State*, 805 S.W.2d 396, 401 (Tex. Crim. App. 1990)); *see also* Tex. Att'y Gen. Op. No. JM-140 (1984) (peace officer employed in a private capacity was acting as a peace officer when he apprehended suspect). Thus, an off-duty peace officer engaged as a security guard on a casino boat who observes a crime becomes an on-duty police officer in the eyes of the law. As we have noted, however, a peace officer's power to act may be more limited outside the boundaries of his or her geographical jurisdiction than within them. *See* discussion *supra* pp. 4-6.

With respect to the authority of a peace officer working off-duty as a security guard, you also ask if such an officer may "wear his uniform and badge as a symbol of authority when [] outside his jurisdiction" in the state. *See* Request Letter, *supra* note 1, at 2 (question 3). We are not aware of any statute precluding a properly commissioned peace officer from wearing his or her uniform and badge while working off-duty outside his jurisdiction. *But see* TEX. PEN. CODE ANN. § 37.12 (Vernon Supp. 2002) (false identification as a peace officer). We suggest, however, that a peace officer consult his or her employer's regulations regarding officers' off-duty employment. *See, e.g.,* TEX. GOV'T CODE ANN. § 411.0078(c) (Vernon 1998) (providing that Texas Department of Public Safety shall adopt reasonable regulations regarding types of off-duty law enforcement services for which officer commissioned by department may wear department uniform).

## B. Peace Officers' Authority Beyond the State of Texas' Territorial Waters

Next, we address the authority of Texas peace officers outside the state's territorial waters. You ask, among other things, if "a peace officer maintain[s] his status as a peace officer when outside the jurisdiction of the state/nation"; whether a peace officer may make a lawful arrest on the high seas; and, more generally, "What is a peace officer's statutory authority outside the jurisdiction of the state." Request Letter, *supra* note 1, at 3 (questions 1, 2, 5). As we will explain, we agree with your assessment that once a boat leaves Texas' territorial waters, peace officers of this state have no authority to act under Texas law. *See id.* at 3.

The United States exerts special maritime criminal jurisdiction over United States vessels and, in some cases, vessels of other nations on the high seas outside its territorial jurisdiction, *see* 18 U.S.C. § 7(1), (8) (1994) (extending special maritime jurisdiction "[t]o the extent permitted by

international law, [over] any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States"), as does the State of Florida, *see* FLA. STAT. ANN. § 910.006 (West 2001) (extending special maritime criminal jurisdiction of the State of Florida to certain acts on board a ship outside the state); *Stepansky*, 761 So. 2d 1027 (upholding FLA. STAT. ANN. § 910.006 against claims that state assertion of jurisdiction over crime that occurred on the high seas violated Supremacy Clause of the United States Constitution). By contrast, the State of Texas has exerted no such special maritime criminal jurisdiction and, as a general matter, the Penal Code and the Code of Criminal Procedure apply only within the state. Chapter 14 of the Code of Criminal Procedure, for example, authorizes Texas peace officers to make warrantless arrests only within the state. *Cf. United States v. Hernandez*, 715 F.2d 548, 550-51 (11th Cir. 1983), *cert. denied*, 465 U.S. 1009 (1984) (holding that Florida law authorizing warrantless arrests "can only be applied to acts that occur within the boundaries of the State of Florida, which with regard to the west coast of Florida, extends three marine leagues or approximately nine geographical miles seaward of the Gulf of Mexico coastline"); Tex. Atty. Gen. Op. No. DM-77 (1992) ("Since the authority of a sheriff to investigate crime is generally limited to his county, it is clear that he can exercise no such authority outside the State of Texas."). Thus, once a casino boat sails beyond the state's seaward boundary, any authority an officer may have to keep the peace and detain passengers would not be based on the law of the State of Texas.

You ask, "if the officer cannot arrest the individual, can they be detained, [and] if so by whom, and to what extent can an individual be held until the ship re-enters the State or docks at a port within the county?" Request Letter, *supra* note 1, at 2 (question 7). As discussed above, *see supra* p. 3, the criminal jurisdiction of the United States extends beyond the State of Texas' seaward boundary. *See* 18 U.S.C. § 7 (1994) (special maritime criminal jurisdiction of the United States); Pub. L. No. 104-132, § 901(a) (1996), *reprinted in* 18 U.S.C. § 7, Notes (Supp. V 1999) (extending the United States' seaward boundary for purposes of criminal jurisdiction to twelve nautical miles from the coast). Within the jurisdiction of the United States, federal law may authorize a Texas peace officer to act. For example, federal common law may authorize a peace officer to make a citizen's arrest for a felony committed within his or her view. *See Hernandez*, 715 F.2d at 550 (applying federal common law of citizen's arrest to uphold Florida marine officers' arrest beyond that state's territorial waters); *see also* 18 U.S.C. § 13 (1994) (incorporating state criminal law for areas within federal jurisdiction); *id.* §§ 3041 (1994) ("For any offense against the United States, the offender may, by any . . . chancellor, judge of a supreme or superior court, chief or first judge of the common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where the offender may be found . . . be arrested . . . ."); 3238 (venue for trial of offenses begun or committed upon the high seas). Federal authorities may be able to provide more specific counsel regarding the extent to which federal law might empower state peace officers to make arrests and keep order within the jurisdiction of the United States but outside the jurisdiction of the State of Texas.

On the high seas, beyond the jurisdiction of both the State of Texas and the United States, the law of the ship's flag state[3] and international law may be relevant to the authority to keep order. *See supra* note 3, RESTATEMENT OF FOREIGN RELATIONS LAW: THE LAW OF THE SEA § 502(2) (Rights and Duties of Flag State) ("The flag state may exercise jurisdiction to prescribe, to adjudicate, and to enforce, with respect to the ship or any conduct that takes place on the ship."). For example, an officer may have authority to detain passengers as an agent of the ship's captain. As you have not asked about any particular ship or situation, we will not speculate on that authority here.

We note, however, the State of Texas has extended its criminal jurisdiction in limited circumstances to conduct that occurs outside the state, if, for example, the conduct is an element of an offense that occurs inside the state or it constitutes an attempt to commit an offense inside the state. *See* TEX. PEN. CODE ANN. § 1.04(a)-(c) (Vernon 1994); *see also* TEX. CODE CRIM. PROC. ANN. art. 13.01 (Vernon 1977) (governing venue for offenses committed wholly or partly outside the state). Thus, the State of Texas may have jurisdiction to prosecute a person for acts committed on a casino boat while it is sailing beyond the state's territorial waters, even though a Texas peace officer does not have the authority to arrest the person at the time the acts are committed. *See, e.g., Lyons v. State*, 711 So. 2d 71 (Fla. App. 1998) (Florida had jurisdiction over theft that occurred on casino ship outside state's territorial waters because intent element of offense occurred within state; by boarding casino ship with cheating device, defendant boarded ship with intent to steal from casino). In certain circumstances, a peace officer, who does not have the authority to arrest a person under Texas law at the time an offense is committed beyond the state's territorial jurisdiction, may be authorized to arrest that person under the laws of the state once the casino boat reaches the state's territorial waters. *See, e.g.,* TEX. CODE CRIM. PROC. ANN. art. 14.04 (Vernon 1977) ("Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."); *id.* ch. 15 (Vernon 1977 & Supp. 2002) (Arrest under Warrant); *id.* art. 15.06 (Vernon Supp. 2002) (warrant of arrest "shall extend to any part of the State").

You ask if a peace officer is "entitled to qualified immunity when he is outside the jurisdiction of the state/nation." Request Letter, *supra* note 1, at 2 (question 6). Your conclusion that a Texas peace officer would not be entitled to qualified immunity as a peace officer under Texas law for acts committed on the high seas outside the state's jurisdiction, *see id.* at 4, is consistent with our analysis that Texas law does not authorize a Texas peace officer to act beyond the state's

---

[3]Under international law, "[s]hips have the nationality of the State whose flag they are entitled to fly." Convention on the High Seas, Apr. 29, 1958, art. 5(1), 13 U.S.T. 2312, T.I.A.S. No. 5200; *see also, e.g.,* RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES: THE LAW OF THE SEA § 501 (1986) (Nationality of Ships) ("A ship has the nationality of the state that registered it and authorized it to fly the state's flag . . . .") [hereinafter RESTATEMENT OF FOREIGN RELATIONS LAW].

seaward boundary. To establish qualified immunity, an officer must show that the disputed incident occurred while he was (1) performing discretionary duties, (2) in good faith, and (3) was acting within the scope of his authority. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). While a peace officer may be able to establish that he or she was acting within the scope of his or her official duties while performing acts as an off-duty security guard, *see* discussion regarding authority of off-duty peace officer *supra* p. 8, an officer would have great difficulty establishing that he or she was acting within the scope of his or her official authority on the high seas beyond the jurisdiction of the State of Texas. What immunity, if any, might be available to a peace officer in a suit for acts committed on the high seas would depend upon the factual circumstances and choice of law issues involving federal law, international law, and the law of the ship's flag state that are beyond the scope of this opinion. *See, e.g., Saucier v. Players Lake Charles, L.L.C.,* 751 So. 2d 312 (La. App. 1999) (holding federal maritime law applicable to false arrest claim arising from incident on gaming boat).

With respect to the high seas, you also ask about the authority of a peace officer working off-duty to carry a weapon "in a place where alcoholic beverages are sold if (1) that boat is outside the State? (2) that boat is outside the country?" Request Letter, *supra* note 1, at 2 (question 4). The Penal Code generally prohibits the carrying of weapons within the state, *see* TEX. PEN. CODE ANN. §§ 46.02, .03 (Vernon Supp. 2002), and provides an enhanced penalty for carrying a weapon "on any premises licensed or issued a permit by this state for the sale of alcoholic beverages," *id.* § 46.02(c), but under section 46.15 these provisions do not prohibit "a peace officer from carrying a weapon *in this state*, regardless of whether the officer is engaged in the actual discharge of the officer's duties while carrying the weapon," *id.* § 46.15(a)(1) (emphasis added). We assume that, because the casino boats serve alcohol within the state, the casino boats have obtained alcoholic beverage permits issued by the State of Texas that apply to all or some of the vessels' premises.

Texas peace officers are affirmatively authorized to carry weapons on the licensed premises within the state. *See id.* You appear concerned that the premises at issue here move outside the state's jurisdiction, and perhaps beyond the ambit of the section 46.15 exception for peace officers. As the Penal Code's prohibition against carrying weapons applies only within the state, however, *see id.* § 1.03 (Vernon 1994) (establishing state's territorial jurisdiction for Penal Code offenses), it does not apply to a peace officer carrying a weapon on a ship outside the state's territorial waters, even on premises licensed by the state.

Also relevant is a federal statute prohibiting the carrying of a weapon on a vessel "registered, enrolled, or licensed under the laws of the United States." 18 U.S.C. § 2277(a) (1994). This prohibition does not apply to state peace officers "while acting in the performance of their duties, who are authorized by law or by rules or regulations to own or possess any such weapon." *Id.* § 2277(b). Nor does it apply if the person "previously obtain[ed] the permission of the owner or the master of such vessel." *Id.* § 2277(a).

In sum, Texas law does not prohibit a peace officer from carrying a weapon in licensed premises on a ship beyond the state's territorial waters and does not apply to an officer's authority to carry a weapon outside the state's jurisdiction. Federal law permits a peace officer to carry a weapon on a United States vessel within the state's territorial waters on the basis of his or her status as a peace officer of the State of Texas and on the seas outside the state's territorial waters with the consent of the ship's captain. *See id.* The authority of a peace officer to carry a weapon on a vessel of another nation outside the State of Texas' jurisdiction may depend upon international law and the law of the vessel's flag state. *See supra* note 3, RESTATEMENT OF FOREIGN RELATIONS LAW: THE LAW OF THE SEA §§ 501, 502. A peace officer should also consult his or her employer regarding the employer's policies governing off-duty employment.

You are also concerned about the authority of a Texas peace officer to wear his or her uniform and badge outside the state and outside the country. *See* Request Letter, *supra* note 1, at 2 (question 3). We are not aware of any state or federal law prohibiting a peace officer from wearing his or her uniform and badge on the seas outside the state or outside the United States. The authority of a peace officer to wear a uniform and badge on a vessel of another nation outside the state's jurisdiction may depend upon international law and the law of the vessel's flag state. *See supra* note 3, RESTATEMENT OF FOREIGN RELATIONS LAW: THE LAW OF THE SEA §§ 501, 502. Again, we also suggest that a peace officer consult his or her employer regarding the employer's policies governing off-duty employment.

## C. Relevance of Ship's Registry in the United States

Finally, you ask if "the answer to any of these questions [would] change if the ship is registered in the United States." Request Letter, *supra* note 1, at 3 (question 9). This question raises the issue of whether the affirmative defense to Texas gambling offenses provided in section 47.09 of the Penal Code applies to vessels that are not registered in the United States. *See* TEX. PEN. CODE ANN. § 47.10 (Vernon 1994) ("If 18 U.S.C. Section 1082 is repealed, the affirmative defenses provided by Section 47.09(b) apply only if the vessel is documented under the laws of the United States."). If the defense does not apply to vessels that are not registered in the United States, then vessels registered in other countries would not be permitted to conduct gambling trips out of your county. You do not ask this question, however, and we do not resolve it here.

As you do not provide information regarding the registry of the ships at issue, we address your final question only in very general terms. With the caveat regarding Penal Code section 47.10, we do not believe that the nationality of the vessel is significant to the state law issues we have considered.

As we have said, the State of Texas has concurrent criminal jurisdiction over acts committed within its territorial waters, provided that there is no conflict with federal law or the rights of foreign nations. *See id.* § 1.04(d); TEX. NAT. RES. CODE ANN. § 11.012(b) (Vernon 2001); *Skiriotes*, 313

U.S. 69; *Stepansky*, 761 So. 2d at 1033. As a matter of general international law, a foreign ship that sails into the territorial waters of a coastal state is subject to local criminal jurisdiction, *see supra* note 3, RESTATEMENT OF FOREIGN RELATIONS LAW: THE LAW OF THE SEA § 502 cmt. d (Rights and Duties of Flag State) ("The flag state has jurisdiction to prescribe with respect to any activity aboard the ship [], but such jurisdiction is not exclusive when the ship is in a port or internal waters of another state. The flag state's jurisdiction also overlaps in some respects with the jurisdiction of the coastal state when the ship is in the territorial sea."); *see also id.* § 513 cmt. e (Passage Through Territorial Sea, Straits, and Archipelagic Waters) (no innocent right of passage where vessel "disturb[s] the peace of the coastal state or the good order of the territorial sea"; assertion of local criminal jurisdiction over foreign vessel appropriate where the assistance of local authorities has been requested by the captain of the ship); *Ex parte Ponzi*, 290 S.W. 170, 172 (Tex. Crim. App. 1926) (when "a merchant vessel of one country enters the ports of another for the purposes of trade, it subjects itself to the law of the place to which it goes, unless by treaty or otherwise the two countries have come to some different understanding or agreement. As the owner has voluntarily taken his vessel for his own private purposes to a place within the dominion of a government other than his own, and from which he seeks protection during his stay, he owes that government such allegiance for the time being as is due for the protection to which he becomes entitled."); Tex. Att'y Gen. Op. No. V-229 (1947) at 4-5 (same). Furthermore, the casino boats at issue have hired Texas peace officers to act as security guards during gambling cruises, invoking the protection of Texas law. Presumably the majority of the boats' gambling patrons are United States citizens. In these circumstances, we do not believe that the nationality of the ship would affect Texas peace officers' authority within the state's territorial waters.

With respect to the effect of the ship's nationality outside the state's territorial waters, the authority of Texas peace officers to make arrests under state law does not extend beyond the state's seaward boundary. As we have said, the law of the ship's flag state may be relevant to a Texas peace officer's authority to keep order on the ship and to detain passengers. The fact that a ship is registered in the United States may be relevant to federal jurisdiction, *see, e.g.*, 18 U.S.C. § 7 (1994), but would not operate to extend a Texas peace officer's authority under state law beyond the state's territorial waters. We emphasize, however, that a Texas peace officer may have the authority to keep the peace and detain passengers on the high seas under other law and, under certain circumstances, may have authority to arrest a person under state law once the ship sails back into the state's territorial waters. *See* discussion *supra* pp. 9-10. In addition, federal law may authorize a peace officer to make an arrest on a United States vessel under certain circumstances. *See* discussion *supra* p. 9.

**S U M M A R Y**

The seaward boundary of the State of Texas and its coastal counties extends three marine leagues into the Gulf of Mexico. The state and its coastal counties may exercise criminal jurisdiction on the state's territorial waters, provided that there is no conflict with federal law or the rights of foreign nations. Texas peace officers acting as security guards on casino boats have the authority to make arrests under state law within the state's territorial waters. The extent of that authority depends upon the type of peace officer and whether he or she is within his or her jurisdiction.

Once a casino boat sails beyond the state's seaward boundary, a Texas peace officer no longer has the authority to make arrests under the law of the State of Texas. Within the jurisdiction of the United States, federal law may authorize a peace officer to make an arrest under certain circumstances. On the high seas, beyond the jurisdiction of both the State of Texas and the United States, the law of the ship's flag state and international law may be relevant to a Texas peace officer's authority to keep order on the ship and to detain passengers.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee